ESTATE OF HENRY WILSON, FRANCIS A. WILSON, BENEFICIARY, TRANSFEREE AND CONSTRUCTIVE EXECUTOR; MARY H. WILSON, BENEFICIARY, TRANSFEREE AND CONSTRUCTIVE EXECUTRIX; AND WINIFRED T. WILSON, BENEFICIARY, TRANSFEREE AND CONSTRUCTIVE EXECUTOR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 92262, 92263, 92264. Promulgated November 30, 1943.

*Louis Janin, Esq.*, for the petitioners.
*Alva C. Baird, Esq.*, for the respondent.

OPINION.

ARNOLD, *Judge:* Petitioners contend first that the estate tax return made and subscribed by the Commissioner of Internal Revenue on May 17, 1930, instituted the running of the statute of limitations, and that respondent has wholly failed to show any fraud which would remove the bar of the statute. Secondly, petitioners contend that the burden of proof is upon respondent by reason of the affirmative allegations in his answer, and that the presumption of correctness does not apply to his third "final determination" due to the wide variance between it and his earlier determinations, and because it is not founded upon fact, it is arbitrary, unreasonable, and capricious, and greatly overstates the amount of any possible estate of Henry Wilson. Thirdly, petitioners contend that all the property accumulated by Henry Wilson was community property under the laws of California or Washington, that from time to time and pursuant to an oral agreement between husband and wife decedent divided the proceeds of or the property itself with his wife, that to the extent of this division the community character of the property was destroyed and Mary H. Wilson's share became and remained her separate property, but that to the extent the property was not divided Mary H. Wilson retained her community interest therein. Fourthly, petitioners contend that, except for the gifts of the steamer interests to Mary H. Wilson in 1924 and his account in the San Francisco Bank on June 1, 1928, decedent made no gifts or transfers of property taxable as a part of his gross estate. And, finally, petitioners contend that the 25 percent delin-

quency penalty is inapplicable because none of them was required by law to file an estate tax return.

We shall consider first petitioners' contention that assessment of the deficiency is barred by the statute of limitations. This contention is bottomed upon the return filed by respondent in May 1930, being *the return* specified in section 310 (a) of the Revenue Act of 1926, set forth in the margin.[1] Concededly, no other return respecting the estate of Henry Wilson, or respecting the transferees or beneficiaries of said estate, has been filed.

The three year period of limitations in section 310 is expressly inapplicable in the case of a false or fraudulent return with intent to evade tax or in the case of a failure to file a return. In such cases section 311 (a), Revenue Act of 1926, set forth in the margin,[2] provides that the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, *at any time.* Respondent determined a fraud penalty upon the theory that the claim for refund filed by petitioners was fraudulent and for the purpose of evading tax. Claim for this fraud penalty .has since been abandoned by respondent because there is no statutory authority for the imposition of a. fraud penalty for evasion of tax in filing a fraudulent claim for refund.

Petitioners look beyond section 311 (a) to the provisions of section 3176 of the Revised Statutes, as amended by section 1103, Revenue Act of 1926, the pertinent portions of which appear in the margin.[3] They point out that the only return filed was the one made and subscribed by the Commissioner on May 17, 1930, pursuant to section 3176 of the Revised Statutes, that said section makes this return "prima facie good and sufficient for all legal purposes," that this return instituted

---

[1] SEC. 310. (a) Except as provided in section 311, the amount of the estate taxes imposed by this title shall be assessed within the three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of three years after the return was filed.

[2] SEC. 311. (a) In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

[3] SEC. 1103. Section 3176 of the Revised Statutes, as amended, is amended to read as follows :

"SEC. 3176. If any person, corporation, company, or association fails to make and file a return or list at the time prescribed by law or by regulation made under authority of law, or makes, willfully or otherwise, a false or fraudulent return or list, the collector or deputy collector shall make the return or list from his own knowledge and from such information as he can obtain through testimony or otherwise. In any such case the Commissioner of Internal Revenue may, from his own knowledge and from such information as he can obtain through testimony or otherwise, make a return or amend any return made by a collector or deputy collector. Any return or list so made and subscribed by the Commissioner, or by a collector or deputy collector and approved by the Commissioner, *shall be prima facie good and sufficient for all legal purposes.* [Italics supplied.]

"If the failure to file a return (other than a return under Title II of the Revenue Act of 1924 or Title II of the Revenue Act of 1926) or a list is due to sickness or absence, the collector may allow such further time, not exceeding 30 days, for making and filing the return or list as he deems proper."

the running of the statutory period of limitations, citing *Joe Goldberg*, 14 B. T. A. 465, 467; *Douglas L. Edmonds, Administrator*, 31 B. T. A. 962, 966; affd., 90 Fed. (2d) 14; certiorari denied, 302 U. S. 713; *Estate of Lee R. Farrell*, 35 B. T. A. 265, 270; *Fred Taylor*, 36 B. T. A. 427, 428; and, since more than seven years elapsed between the filing of the return and the notice of deficiency, assessment is barred.

This argument, it should be noted, is based upon the provisions of a general statute. No similar provision appears in sections 310 and 311 of the 1926 Act, which relate specifically to estate tax returns. None of petitioners' authorities and none of the cases examined in our research expressly hold that a return filed by the Commissioner under section 3176 of the Revised Statutes started the running of the statute of limitations. Some of these authorities indicate that the statute might begin running from the filing of such a return, but in each instance the case turned upon some question other than the statutory bar on assessments. We have carefully examined the *Goldberg*, *Edmonds*, *Farrell*, and *Taylor* cases, *supra*, but we do not agree that they establish the rule contended for by petitioners. Each of the cited cases is distinguishable on its facts, each assumes or the facts show that the return under section 3176 contained all necessary data from which the tax could be computed, and each is disposed of upon some ground other than the bar of the statute of limitations.

In the *Goldberg* and *Taylor* cases we considered the effect of the statutory language providing that a return under section 3176 "shall be prima facie good and sufficient for all legal purposes." In the former case we stated that this language "can only mean that Congress intended that a return so filed should answer the same purposes as if filed by the parties themselves." In the latter case we said, "The return filed by the respondent [Commissioner] became the return of petitioner, and stands on the same basis as if it had been filed by petitioner." Petitioners insist that these and other cited authorities uniformly call and treat "a return under *section 3176, Revised Statutes,* as *the return for the taxpayer.*"

If, as petitioners contend, the return here should be treated as the taxpayer's return, it would seem logical to judge the sufficiency, completeness, and accuracy of the return by the same standards that prevail where the taxpayer filed the return in the first instance. Assuming that the instant return had been filed by the petitioners, we do not think it would have instituted the running of the statute of limitations, and upon the record now before us, we would have to hold that the return was false and fraudulent with the intent to evade tax. In the case of a false and fraudulent return section 311 (a), *supra*, prevents the running of the statute of limitations and authorizes assessment of the tax at any time.

*Heffernan* v. *Alexander* (D. C.), 48 Fed. (2d) 855, and *Roosevelt & Son Investment Fund*, 34 B. T. A. 38; affirmed in *Commissioner* v. *Roosevelt & Son Investment Fund*, 89 Fed. (2d) 706, which are among the other authorities cited by petitioners, do not apply, as no fraud was involved in either case and no question was raised in either as to the sufficiency, accuracy, or completeness of the returns filed under section 3176.

While relying on the above cited cases, and numerous others cited, and insisting that they constituted authority for raising the statutory bar in these proceedings, the petitioners, nevertheless, conceded in their closing brief (p. 23) that "no case has been discovered which can accurately be cited as on 'all fours' with this proceeding," and we are unable to find any. Resort must be had, therefore, to legislative intent and the guideposts furnished by the decided cases. Decisions of the Supreme Court have held that "the return" which will start the statute running is one that "evinces an honest and genuine endeavor to satisfy the law," *Zellerbach Paper Co.* v. *Helvering*, 292 U. S. 172; one that contains all the data from which the tax can be computed, *Germantown Trust Co.* v. *Commissioner*, 309 U. S. 304; and one that is verified as a return, *Lucas* v. *Pilloid Lumber Co.*, 281 U. S. 245. In *Corona Coal & Coke Co.*, 11 B. T. A. 240, 244, the Board stated that, until a return is filed which specifically sets forth the items of gross income and the deductions and credits allowed, the period of the statute of limitations does not begin to run. In *Peerless Iron Pipe Exchange, Inc.*, 23 B. T. A. 900, the Board stated that the "purpose and function of all income tax returns, on whatever form, is to furnish such information as will enable the respondent to proceed intelligently in determining the proper amount of tax to be assessed." See also *Blenheim Co., Ltd.*, 42 B. T. A. 1248; affd., 125 Fed. (2d) 906.

Section 304 of the Revenue Act of 1926, set forth in the margin,[4] required the filing of a return under oath in duplicate, setting forth (1) the value of the gross estate of the decedent at the time of his

---

[4] SEC. 304. (a) The executor, within two months after the decedent's death, or within a like period after qualifying as such, shall give written notice thereof to the collector. The executor shall also, at such times and in such manner as may be required by regulations made pursuant to law, file with the collector a return under oath in duplicate, setting forth (1) the value of the gross estate of the decedent at the time of his death, or, in case of a nonresident, of that part of his gross estate situated in the United States; (2) the deductions allowed under section 303; (3) the value of the net estate of the decedent as defined in section 303; and (4) the tax paid or payable thereon; or such part of such information as may at the time be ascertainable and such supplemental data as may be necessary to establish the correct tax.

(b) Return shall be made in all cases where the gross estate at the death of the decedent exceeds $100,000, and in the case of the estate of every nonresident any part of whose gross estate is situated in the United States. If the executor is unable to make a complete return as to any part of the gross estate of the decedent, he shall include in his return a description of such part and the name of every person holding a legal or beneficial interest therein, and upon notice from the collector such person shall in like manner make a return as to such part of the gross estate.

death, (2) the deductions allowed under section 303, (3) the value of the net estate of the decedent, and (4) the tax paid or payable thereon, and such supplemental data as may be necessary to establish the correct tax.

Petitioners do not contend that the return executed May 17, 1930, meets the above requirements, for their briefs concede that this return is inaccurate, incomplete, and insufficient.

It is evident, therefore, that when *the return* is filed it must contain the required information. The burden of furnishing the information upon which assessment may be made is cast by law upon the taxpayer. By measuring the period of limitation from the filing of the return the statute manifests a clear legislative intent that:

* * * the period should begin only when the taxpayer had furnished such information in the manner prescribed. *Florsheim Bros. Co.* v. *United States*, 280 U. S. 453 * * *. Meticulous accuracy, perfect completeness, or absence of any omission is not exacted. But a return which fails to comply in a substantial degree with the requirements of the statute in respect to disclosing the requisite information essential to the making of assessments does not suffice to start the period of limitation.

*Alkire Inv. Co.* v. *Nicholas* (C. C. A., 10th Cir.), 114 Fed. (2d) 607, 610.

In the last cited case, the *Alkire Inv. Co.* filed corporate returns for 1926 to 1935, inclusive, on Form 1120, representing that it had disposed of its income-bearing property, had no gross income, was entitled to no deductions or credits, and had no net income. No disclosure was made that income-bearing property had been conveyed in trust, with power of revocation reserved to taxpayer, which provision would have rendered taxpayer liable for tax on income. There was nothing on the returns to put the Commissioner on notice that disposition of income-bearing property was not made in ordinary manner. Notations on the returns as to disposition of property and representation that there was no gross or net income strongly suggested disposition of its property in the usual manner. In denying taxpayer's claim that collection of the tax was barred by the statute of limitations, the Circuit Court stated in addition to above quoted matter as follows:

* * * While there was no intentional fraud, wilful negligence or purposed attempt at evasion of tax on the part of the taxpayer, the returns not only failed to disclose requisite information but were misleading and calculated to prevent discovery of material facts. Returns of that kind are not effective to start the period of limitation running. Compare *Florsheim Bros. Co.* v. *United States*, *supra; Lucas* v. *Pilliod Lumber Co.*, 281 U. S. 245 * * * ; *Germantown Trust Co.* v. *Commissioner*, 309 U. S. 304 * * *; *United States* v. *National Tank & Export Co.*, 5 Cir., 45 F. 2d 1005, certiorari denied 283 U. S. 839, * * * *Myles Salt Co.* v. *Commissioner*, 5 Cir., 49 F. 2d 232; *National Contracting Co.* v. *Commissioner*, 8 Cir., 105 F. 2d 488.

If a return filed by a taxpayer may be so defective and misleading that it will not set in motion the statute of limitations, we fail to see how an equally defective and misleading return filed by the Commissioner from information furnished by the party in possession of all the facts, and whose duty it was to make full disclosure, is any more effective for that purpose. There is no contention here that Francis A. Wilson revealed assets that the Commissioner omitted from the return. As a matter of fact, all assets disclosed by Wilson to the revenue agent were reported in the return, whether taxable or not. The existence of any other assets was denied by Wilson to the revenue agent, although he well knew of various transfers of property by decedent and of various jointly owned bank accounts. These misrepresentations and this withholding of information from the taxing authorities amounted to fraud and concealment on the part of petitioners which misled the Commissioner and concealed from him the essential data from which the estate tax could properly be computed. Petitioners not only failed to perform their statutory duty of filing a return "disclosing the requisite information essential to the making of assessments," *Alkire Inv. Co.*, *supra*, but they withheld and concealed from the Commissioner the requisite information that would have permitted him to file a sufficient return. To hold the statute bars the Commissioner from assessing a deficiency under these facts would place a premium on petitioners' own derelictions and permit them to profit by their own misconduct. On this issue, therefore, we hold against the petitioners.

In our memorandum opinion accompanying our order of November 22, 1940, denying petitioners' motion for judgment on the pleadings, we pointed out that the determination of the statute of limitations issue involved the consideration of the adequacy of the return filed by the Commissioner. While we discussed therein certain antecedent or collateral questions, we held that under the facts before us the return was inadequate to set in motion the running of the statute of limitations. In discussing the statutory words "prima facie" in sect on 3176, we pointed out that "the sufficiency of the return in any given situation depends upon the facts," and that "If the facts overcome the *prima facie* showing of the return, the return ceases to be good and sufficient in the premises." After commenting upon the grossly inaccurate nature of the return, based upon information furnished by Francis A. Wilson, we said: "The disparity in amount with the true estate and the circumstances of Wilson's action in furnishing information on behalf of the estate are such as clearly to warrant characterization thereof as fraudulent concealment. (Section 320, Revenue Act of 1926)." Our decision herein squares with the conclusion reached in our memorandum opinion entered Novem-

ber 22, 1940, that the return was inadequate to set in motion the statute of limitations.

As an alternative argument petitioners point to the assessment of a deficiency against decedent's estate in October 1930, and contend that the decided cases hold that once the Commissioner has assessed a deficiency in tax the statute of limitations begins to run, citing *United States* v. *Updike*, 281 U. S. 489; *Commissioner* v. *Krug* (C. C. A., 9th Cir.), 78 Fed. (2d) 57, affirming 30 B. T. A. 1376; *Caroline J. Shaw, Executrix*, 21 B. T. A. 400; *Frank L. Roche*, 21 B. T. A. 1139. We fail to see the applicability of the cited cases to the facts here. The assessment of October 1930 was paid and satisfied, but the assessment of one deficiency is not necessarily final, as section 307, Revenue Act of 1926, definitely contemplates that more than one deficiency may be determined and assessed. No other assessment was made prior to the issuance of the deficiency notices herein. In the *Updike* case a return was filed for the taxpayer by a revenue agent in 1918 and an assessment was made in 1920. The period of limitations there considered was on collection, not on assessment, which was timely. Our principal problem is whether the only return filed was a sufficient return to start the statute of limitations running. If the Commissioner's return was insufficient for that purpose, an assessment based thereon would likewise be insufficient.

We shall next consider petitioners' last contention, that none of them was required by law to file an estate tax return and therefore no delinquency penalty under section 1103, Revenue Act of 1926, amending section 3176 of the Revised Statutes, *supra*, can be applied. Section 300 (a), set forth in the margin,[5] defines the term "executor," where there is no executor or administrator appointed, qualified and acting, as "any person in actual or constructive possession of any property of the decedent." Petitioners contend that they are not "executors" and therefore could not be required to file a return. Their contention rests upon the fact that they possessed no property subject to probate or administration proceedings and that decedent had, at the time of his death, no property subject to disposition by will or the laws of intestate succession. Differently stated, they contend that transfers prior to decedent's death and joint tenancies at his death had wiped out all his property and left nothing subject to probate.

If by such anticipatory arrangements a decedent could defeat the burden of the estate tax, the law would soon be a nullity. The provisions of section 302, subsection (a) to (i), inclusive, were designed to reach and include within a decedent's gross estate the value of all

---

[5] Sec. 300. When used in this title—

(a) The term "executor" means the executor or administrator of the decedent, or, if there is no executor or administrator appointed, qualified, and acting within the United States, then any person in actual or constructive possession of any property of the decedent.

his property, real or personal, tangible or intangible, wherever situated. Subsections (c) and (e) thereof specifically include any interest of the decedent transferred under specified circumstances and any interest held by decedent as joint tenant with another. Since these provisions bring certain transfers and jointly held property of a decedent into his gross estate for the purposes of the Federal estate tax, the transferee and/or the joint tenant are in actual or constructive possession of the property of the decedent within the meaning of section 300, *supra*. This being so they are "executors" of decedent's estate for Federal estate tax purposes and are charged by law with the responsibility of filing an estate tax return as executors. Sec. 304, *supra*.

In our opinion each of these petitioners was an executor for Federal estate tax purposes, as they each held property transferred to them by decedent in contemplation of death. Each of them was charged with filing a return for the estate of Henry Wilson and disclosing therein property of his estate in their possession. If any one of them was unable to make a complete return for the estate of the decedent, he or she was charged with the responsibility of including in the return a description of the part omitted and the name of every person holding a legal or beneficial interest therein. Sec. 304 (b), *supra*. It is admitted that none of these petitioners filed such a return. Section 1103, *supra*, makes imposition of the 25 percent penalty mandatory in case of any failure to make and file a return or list within the time prescribed by law except where failure to file is due to reasonable cause. There has been no showing of reasonable cause here and the penalty must be imposed. *Scranton, Lackawanna Trust Co., Trustee*, 29 B. T. A. 698; affd., 80 Fed. (2d) 519; certiorari denied, 297 U. S. 723; *Edmonds* v. *Commissioner, supra; National Contracting Co.* v. *Commissioner*, 105 Fed. (2d) 488; *John B. Nordholt*, 4 B. T. A. 509.

Petitioners' contention that respondent has the burden of proof with respect to his affirmative allegations and the transferee liability is, of course, well founded, but we can not agree that respondent has the burden in other particulars. Petitioners alleged the arbitrary, unreasonable, and capricious nature of respondent's determination and it is their burden to establish the allegation. The rule is stated in *Helvering* v. *Taylor*, 293 U. S. 507, as follows: "unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid." We think the rule is applicable here and petitioners must carry the burden.

Petitioners argue that the Commissioner's return is prima facie good and can only be overcome by clear and competent evidence; that the Commissioner's later determination is no more presumptively correct than his earlier determinations; that the deficiencies herein are predicated upon false assumptions and false inferences, and not upon

facts; that the deficiencies are so arbitrary and unreasonable that any presumption in their favor disappears under the established facts; and that because of the inconsistencies of respondent's position transferee liability has not been established.

Much has been said by both parties about the manner in which respondent determined the deficiencies herein, that is, the data used and the basic facts behind his determination. Our findings show that respondent erred in some particulars in that he erroneously included in decedent's gross estate certain jointly held property and certain property erroneously considered to have been transferred by decedent in contemplation of death. Our findings are based upon the evidence adduced by petitioners with respect to these items of property, and the weight, competency, and materiality thereof. To the extent that respondent's determination is disapproved, the petitioners have, in our judgment, sustained their burden of proof.

Petitioners' difficulties here could have been obviated in large measure if they had filed the return which Francis A. Wilson notified the collector would be filed in due course. Instead of following through and complying with the statutory requirements, recognized in the notification to the collector of decedent's death, the petitioners elected not to file. Thereafter, when respondent's investigation included only two items of property in the gross estate they elected to stand on this return as the return for the estate, well knowing that other property was held by decedent and his wife in joint tenancy, even as their home place was so held. We are firmly convinced by this record that petitioners did not act in good faith. They knew, at least Francis A. Wilson knew—he testified that he was personal secretary for his father and managed his mother's affairs—that the information given the respondent's representative was incomplete. Francis A. Wilson knew that he failed to make a full and complete disclosure as to all property transfers made by his father and as to all bank accounts in which decedent held a joint interest with his wife at the time of his death. Petitioners specifically concede that they made no disclosure of the transfer of the steamer interests to Mary Wilson in 1924, and further concede that such transfers are taxable. They point to this concession as evidence of their good faith and willingness to cooperate, but the more pertinent fact, which they overlook, is that the filing of the transfers for record so shortly after decedent's death left them no alternative but to admit the transfers were to take effect in possession and enjoyment at or after death. Furthermore, Mary Wilson's income tax returns for the years subsequent to the transfer show that she continued thereafter to claim depreciation on the same basis that she had in 1921, which is inconsistent with any effective transfer in 1924.

Bearing in mind the duty that rests upon an executor, a transferee, or a beneficiary to report any part of a decedent's estate in their posses-

sion, upon notice from the collector (sec. 304 (b), *supra*), it seems clear that petitioners were derelict in their duty. It is no excuse to say that the return filed by respondent was incomplete and inaccurate. Respondent in making a return is forced by the very nature of things to rely upon the information and testimony given by persons knowing the facts. If they fail or refuse to make a disclosure of pertinent facts respecting the estate, or if they deny the existence of assets includible in the gross estate, respondent can not be charged with arbitrary, capricious, and unreasonable action if after discovery of the existence of such assets, coupled with a continued refusal by the interested parties to make any further disclosure as to assets of the estate, he determines the value of the gross estate from such testimony and information as is available to him and includes therein all assets which may have been jointly held by decedent at death or transferred under circumstances which might bring the property within the estate. Much of what has occurred here is due to petitioners' own acts of omission and commission. If because thereof they find themselves in difficulty with the tax authorities, it is a difficulty of their own making and they should not be heard to complain.

We do not mean to say that we fully approve the method respondent used to determine the deficiencies herein. The record convinces us, and in this respect we agree with petitioners, that the return filed on Form 706 for the estate of Henry Wilson was carelessly prepared, contains errors on its face, and completely omitted all deductions to which the estate would be entitled. Mistakes in preparing the return were admitted on the witness stand by the revenue agent who prepared it. During his testimony he outlined in detail how he prepared the basic data upon which the deficiency notices were predicated. A discussion of his method will in no way aid the decision we have reached, based upon the facts contained in the record.

As a part of their contention relating to the burden of proof issue, petitioners argue that the conjunctive liability asserted against each of them as beneficiary, transferee, and constructive executor is indicative of the arbitrary "shot in the dark" determination made by respondent. It is contended that if respondent had based his determination upon facts he could and would have determined which one of these divergent and inconsistent liabilities applied to petitioners. It is also asserted that Congress never intended a transferee to be an executor by reason of the same transfer which made him a transferee, and that, by the statutory term "any property of the decedent," Congress meant property subject to probate proceedings, expenses of administration, and claims of creditors.

The deficiency herein was proposed for assessment against each of these petitioners pursuant to sections 300, 315, and 316 of the

Revenue Act of 1926. Section 300 has been set forth above and the provisions of sections 315 and 316 are set forth in the margin.[6] Section 315 (b), it should be noted, specifically deals with transfers in contemplation of or intended to take effect in possession or enjoyment at or after decedent's death, and with the proceeds of an insurance contract passing to a specific beneficiary. If the estate tax of the decedent is not paid when due this section makes the transferee, trustee, or beneficiary, as the case may be, personally liable for the

---

[6] SEC. 315. (a) Unless the tax is sooner paid in full, it shall be a lien for ten years upon the gross estate of the decedent, except that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof, shall be divested of such lien. If the Commissioner is satisfied that the tax liability of an estate has been fully discharged or provided for, he may, under regulations prescribed by him with the approval of the Secretary, issue his certificate, releasing any or all property of such estate from the lien herein imposed.

(b) If (1) the decedent makes a transfer, by trust or otherwise, of any property in contemplation of or intended to take effect in possession or enjoyment at or after his death (except in the case of a bona fide sale for an adequate and full consideration in money or money's worth) or (2) if insurance passes under a contract executed by the decedent in favor of a specific beneficiary, and if in either case the tax in respect thereto is not paid when due, then the transferee, trustee, or beneficiary shall be personally liable for such tax, and such property, to the extent of the decedent's interest therein at the time of such transfer, or to the extent of such beneficiary's interest under such contract of insurance, shall be subject to a like lien equal to the amount of such tax. Any part of such property sold by such transferee or trustee to a bona fide purchaser for an adequate and full consideration in money or money's worth shall be divested of the lien and a like lien shall then attach to all the property of such transferee or trustee, except any part sold to a bona fide purchaser for an adequate and full consideration in money or money's worth.

SEC. 316. (a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedigs in court for collection, and the provisions prohibiting claims and suits for refunds) :

(1) The liability, at law or in equity, of a transferee of property of a decedent or donor, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed by this title or by any prior estate tax Act or by any gift tax Act.

(2) The liability of a fiduciary under section 3467 of the Revised Statutes in respect of the payment of any such tax from the estate of the decedent or donor.

Any such liability may be either as to the amount of tax shown on the return or as to any deficiency in tax.

(b) The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

(1) Within one year after the expiration of the period of limitation for assessment against the executor or donor; or

(2) If the period of limitation for assessment against the executor expired before the enactment of this Act but assessment against the executor was made within such period,— then within six years after the making of such assessment against the executor, but in no case later than one year after the enactment of this Act.

(3) If a court proceeding against the executor or donor for the collection of the tax has been begun within either of the above periods,— then within one year after return of execution in such proceeding.

(c) The running of the period of limitation upon the assessment of the liability of a transferee or fiduciary shall, after the mailing of the notice under subdivision (a) of section 308 to the transferee or fiduciary, be suspended for the period during which the Commissioner is prohibited from making the assessment in respect of the liability of the transferee or fiduciary, and for 60 days thereafter.

(d) This section shall not apply to any suit or other proceeding for the enforcement of the liability of a transferee or fiduciary pending at the time of the enactment of this Act.

(e) As used in this section, the term "transferee' includes heir, legatee, devisee, and distributee.

tax to the extent of the decedent's interest in the property at the time of transfer, or to the extent of the beneficiary's interest under the insurance contract, and subjects the property to a lien in the amount of the tax.

We see no inherent difficulty under the present facts and circumstances in joining the liabilities of an executor with the liabilities of transferee and beneficiary in one deficiency notice. Petitioners cite our decision in *Milk Bottle Exchange, Inc.*, 43 B. T. A. 33, as prohibiting this joinder of liabilities. But there the deficiency notice was sent to petitioner, as transferee; a petition was filed with the Board by petitioner; an answer was filed by the Commissioner alleging facts to sustain the transferee liability; and a reply thereto was filed by petitioner. Thereafter, the Commissioner discovered that the petitioner therein was not a transferee, but the same corporate entity with a mere change in name, and he then sought to amend his answer so as to hold petitioner *either* as a taxpayer or as a transferee. Upon the authority of *Edward Michael*, 22 B. T. A. 639, and *Hulburd* v. *Commissioner*, 296 U. S. 300, we held that determination of a taxpayer proceeding and a transferee proceeding "may not be made in a single proceeding instituted upon a notice of determination of only one of the two liabilities." But the opinion does not hold that a taxpayer liability and a transferee liability cannot be determined where the notice of deficiency joins the two liabilities.

The facts here show that prior to his death decedent had so depleted his personal estate by transfers and by placing his assets in joint accounts that probate proceedings with respect to his estate were deemed unnecessary by his widow and sons. In fact, the said transfers, together with property placed in joint tenancy, had so thoroughly disposed of and distributed decedent's assets that the Circuit Court of Appeals for the Ninth Circuit held he was insolvent when he died, *Wilson* v. *United States*, 100 Fed. (2d) 552. In the cited case the Circuit Court affirmed a decree of the Federal District Court impressing a trust upon the funds transferred by Henry Wilson to his widow and others on June 1, 1928, and affirmed a judgment of the District Court in favor of the Government in the amount of certain income tax deficiencies. The Circuit Court further held that the transfer of decedent's bank account on June 1, 1928, to his wife and son was fraudulent as to creditors, that decedent was rendered insolvent by said transfer, and that the wife and son received the money in said account impressed with a trust for the benefit of creditors. Clearly, therefore, the amount of decedent's gross estate for estate tax purposes is solely dependent upon property transferred to and in possession of these petitioners at June 5, 1928, which property should be included in his gross estate under section 302, Revenue Act of 1926.

No duly appointed, qualified or acting executor existed against whom respondent could proceed. If he had proceeded against the petitioners only as constructive executors, and established the estate tax liability, he would still have had to proceed against the same parties as transferees and beneficiaries or fiduciaries to collect the tax. The procedure adopted avoids multiplicity of proceedings, and under the circumstances of this case we can not see any logical objection thereto.

Under section 3467, Revised Statutes, referred to in section 316, *supra*, and set forth in the margin,[7] every executor or *other person* who pays any debt due from the decedent's estate before he satisfies and pays debts due the United States becomes personally answerable for the debts due the United States. Petitioners were beneficiaries of *inter vivos* gifts from decedent properly a part of his gross estate. Our findings show that they paid debts of the decedent without providing for estate taxes due the United States out of funds transferred as a gift on June 1, 1928. These beneficiaries were "other persons" within the meaning of section 3467. They must, under the present facts, be charged with knowledge of an estate tax liability and with failure to pay the same, i. e., prior to the jeopardy assessment made by respondent. Therefore, they were personally liable as well as liable as executors and transferees.

The next issue relates to the community property interests of decedent and his spouse. Petitioners urge that decedent accumulated his property in two community property states, but that as a result of divisions from time to time Mary Wilson acquired her share of some of the community property, which thereafter became her separate property and estate. It is argued, however, that to the extent that no division was made by Henry Wilson the community interest of Mary Wilson remained unimpaired. As we understand petitioners now, this contention involves primarily the residence at 22 Seaview Avenue in Piedmont, which it is contended was acquired with community funds.

Respondent's position on this issue is that the gross estate is an accumulation of California community property, that decedent acquired no property after July 29, 1927, except his $12,000 salary, and that it wasn't until July 29, 1927, that the California Code was amended so as to give the wife a vested interest in community property instead of the mere expectancy she had prior thereto, *United States* v. *Robbins*, 269 U. S. 315, and therefore all the community property is includible in decedent's gross estate.

---

[7] Section 3467 R. S. (U. S. Code, Title 31, Money and Finance, ch. 6, sec. 192.) :

"Section 192, Liability of Fiduciaries. Every executor, administrator, or assignee, or other person, who pays any debt due by the person or estate from whom or for which he acts, before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

Petitioners, apparently recognizing the weakness of their position, have insisted that all community property traceable to Wilson Bros. & Co., a Washington partnership, is community property in which Mary H. Wilson had a vested one-half interest. In other words they seek to apply the community property laws of the State of Washington. One difficulty with this argument is that decedent moved to California in 1891 and resided there until his death. Another is that the transfers made to Mary from time to time would normally be considered a distribution in complete satisfaction as to her community share. A third difficulty is that, after the dissolution of the partnership in 1919 and the sale of the logging interests in 1920, decedent had no further partnership interests in the State of Washington, but only in California. It is a matter of record that Mary Wilson insisted upon decedent turning her separate property over to her and we think it unlikely, in view of her tax returns and the various other transfers made to her, that she was less insistent upon receiving her share of the community property. Her tax returns indicate, and the Board found as a fact in *Henry Wilson*, 16 B. T. A. 1280, that she had substantial income from her separate property in 1920–1924, inclusive.

Furthermore, we are in no better position here to trace the community property of Henry Wilson and his spouse back to the Washington partnership through the various distributions than the Board was in *Abraham B. Johnson*, 7 B. T. A. 820. We there held that there was no satisfactory evidence whereby we could determine what portion, if any, of the distributive shares of the decedent from the Washington partnership was subject to division with his wife upon a community property basis. This record shows certain distributions to Mary H. Wilson by decedent in recognition of her community interest in his property, but the evidence is insufficient to determine how much her community share amounted to or how much of the property was transferred to her in recognition of her community interest. Certainly any distributions from the San Francisco branch of Wilson Bros. & Co. after 1919 was California and not Washington community property, and as to this property and as to decedent's salary, respondent must be sustained. *Herbert Marshall*, 41 B. T. A. 1064; *Shea v. Commissioner* (C. C. A., 9th Cir.), 81 Fed. (2d) 937.

Petitioners' contention that Mary H. Wilson held a community interest in the residence and only one-half of the value thereof should be included in decedent's gross estate is answered by the Circuit Court's opinion in *Wilson v. United States, supra.* There the court pointed out that the character of the ownership of property, whether separate or community, is to be determined by the proof showing the mode of acquisition rather than by any declaration of one of the parties that the property was or was not community. The Circuit Court upheld the

District Court's finding that decedent and Mary H. Wilson owned the property as joint tenants with the right of survivorship. We are in no better position from the evidence adduced here to determine the mode of acquisition of this property than the court was in the cited case. That the funds used in acquiring the home may have come from the joint commercial account of decedent and his wife is no basis for inferring that the funds were community property. Actually numerous withdrawals from and deposits to this account were made with funds constituting the separate property of Mary H. Wilson. We are unable to determine what funds she had, if any, in the account at the time the home was acquired. We will not assume that half of the funds invested belonged to her as her community interest or her separate property. Cf. *Rosenberg* v. *Commissioner* (C. C. A., 9th Cir.), 115 Fed. (2d) 910; *Commissioner* v. *Larson* (C. C. A., 9th Cir.), 131 Fed. (2d) 85. If we had to indulge in inferences, we would infer that decedent's funds were used, since Francis A. Wilson testified that all living expenses were borne by decedent. But the burden of proof rests upon petitioners to show that the home was acquired with community funds. That burden, in our opinion, has not been sustained.

The remaining issue requires consideration of the various items of property which respondent determined should be included in the gross estate. We have found the facts with respect to each item of property after carefully weighing, checking, and considering the voluminous and at times contradictory evidence in the record. We have carefully analyzed the returns and copies of returns of the three petitioners and the decedent for such years as were received in evidence. We have with equal care studied the photostatic copies and originals of the many accounts involved, together with the deposits, withdrawals, and transfers from one account to another, shown thereon, and the accruals of interest. We have analyzed the record of payments received and distributions made to the partners of Wilson Bros. & Co. from the sale of the timber lands and logging equipment in Washington, and the dissolution of the partnership by a mutual transfer of interests therein by the Wilsons of Aberdeen and the Wilsons of San Francisco, including the additional payments received from the Aberdeen Wilsons by decedent and his sons. We have examined and considered the several decisions of the Board and the courts involving decedent and the immediate members of his family in so far as they throw light upon the property acquired, disposed of, and held by Henry Wilson from 1887 until the date of his death. We have considered the financial histories of decedent, his wife, and their sons with relation to the property acquired, held, and disposed of by Henry Wilson during his lifetime. We have attempted to trace as far as the record permits each item of property from its source into the possession of the

parties before us and determine whether said property was the separate property of one of them or a part of decedent's gross estate under section 302. We have likewise considered the prior hearings, orders, and opinions in these proceedings and the transcript of the record on appeal of Wilson Bros. & Co., a corporation, as well as the Circuit Court's opinion in that case which appears in *Wilson Bros. & Co. v. Commissioner* (C. C. A., 9th Cir.), 124 Fed. (2d) 606. We have examined and weighed the testimony of the several witnesses for both parties in connection with the documentary evidence in determining which items of property included in the gross estate properly belong therein. We will not therefore discuss the evidence in detail but will state as briefly and succintly as possible the principal facts that influenced our decision.

We have found as a fact that three of the joint accounts of decedent and his wife represented the separate funds of the wife. Section 302 (e), Revenue Act of 1926, set forth in the margin,[8] excludes from the gross estate of a decedent such part of a joint account as may be shown to have originally belonged to the other joint tenant and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth. The evidence convinces us and our findings show that accounts numbered 68036, 18013, and 329758 represented the separate earnings and property of Mary H. Wilson, and accordingly we have excluded these accounts from the gross estate.

We have hereinabove considered the realty at 22 Seaview Avenue and no further comment is required to justify its inclusion in the gross estate as jointly held property.

We have found as a fact that accounts numbered 194242, 700074, and 248082, whether jointly or individually held, were transferred by decedent in contemplation of death and therefore are includible

---

[8] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \*

(e) To the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business. in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: *Provided*, That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: *Provided further*, That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants.

in his gross estate under section 302 (c), Revenue Act of 1926.[9]  As to the last mentioned account little need be said, as petitioners concede its taxability.  Account numbered 700074 was opened April 10, 1928. less than two months before decedent's death, in his wife's name by a transfer of funds from the joint commercial account. Francis A. Wilson identified the deposit as the separate funds of Mary H. Wilson, but could do no more than categorically state that her funds and not decedent's were deposited in the account.  He had no record or corroborating evidence of any sort.  He was unable to tie up the transfer of funds with any separate property of Mary H. Wilson or the liquidation of any specific security.  We are not persuaded by his conclusion that the funds were his mother's separate property. .Decedent had just been through a pronounced spell of shortness of breath which confined him to his room.  At or about that time the shortness of breath began to return with increased severity and frequency.  Within ten days of the transfer he was confined to a hospital, a seriously ill man suffering from weakness of the heart and arteriosclerosis.  Considering his age, his recent recovery from a serious operation, and his condition in February, March, and April of 1928, we are of the opinion that this transfer of funds by decedent was in contemplation of death.  Cf. *Commonwealth Trust Co.* v. *Driscoll* (C. C. A., 3d. Cir.) 137 Fed. (2d) 653.

The facts with respect to the transfer of account numbered 194242 are in many respects the same as the facts with respect to account numbered 700074.  The interval of time between the two transfers was less than two weeks.  Petitioners explain this transfer by stating that it was in accordance with the advice of their tax attorney, and the transfer was made to separate Mary H. Wilson's property from decedent's.  Oddly enough, this advice had no application to other joint accounts which we have held belonged to Mary H. Wilson.  We do

---

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, (including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom) ; except in case of a bona fide sale for an adequate and full consideration in money or money's worth.  Where within two years prior to his death but after the enactment of this Act and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his propery, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then, to the extent of such excess, such transfer or transfers shall be deemed and held to have been made in contemplation of death within the meaning of this title.  Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death but prior to the enactment of this Act, without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title ;

not question that the advice was given, but we think the dominant motive for the transfer was contemplation of death and not the following of the advice of tax counsel.

The inclusion in decedent's gross estate of the separate bank accounts of Francis A. Wilson and Winfred T. Wilson, and the trust created by the latter for his children, was clearly error. We can find no justification for holding that this property of these petitioners represented taxable transfers of the decedent because he had made gifts to them in the past of substantial amounts of property. Petitioners have sustained their burden of proof as to these items and respondent's action is disapproved.

As previously stated herein, we have been unable to follow respondent's method or agree with his determination that $1,096,114.11 should be included in decedent's gross estate representing unidentified assets in the balance sheets of Wilson Bros. & Co., a corporation. A large portion of this sum consisted of I. O. U.'s given by the two Wilsons to their corporation which was organized subsequent to decedent's death. Obviously, there is no statutory authority to include such sums as are represented by these I. O. U.'s in the gross estate. Lacking access to any records and faced with the refusal of Francis A. Wilson to make any further comment or disclosure regarding his father's estate, this sum was included for the purpose of reaching any hidden, unrevealed, and undisclosed assets. While the premise has been shown to be erroneous and the amount included has been largely accounted for, the respondent's assumption was not altogether in error. Decedent's interests in three vessels otherwise unaccounted for have been brought to light as previously undisclosed assets, and it is now stipulated that the value of his interests in said vessels should be included as transfers under 302 (c), *supra*. The transfer of the real property at 1413 Madison Street to his two sons on December 27, 1927, was also brought to light and the statutory presumption that this transfer was in contemplation of death has not been overcome. The existence of a balance in the joint commercial account of decedent and his wife, while not included specifically in the amount of unidentified assets, was as a matter of fact disclosed at the hearing and was made the basis for an amendment by respondent requesting an increase in the deficiency. These facts, while not discussed in connection with the petitioners' argument as to the arbitrary, unreasonable, and capricious nature of respondent's determination, were considered in disposing of the argument, leaving the discussion of the facts for this portion of our opinion.

In redetermining the deficiency in accordance with our determination on the various issues and contentions, the stipulation of the parties respecting the additional deductions to which decedent's estate is entitled should be taken into consideration.

Attention is also directed to the omission from the record of portions of two exhibits, namely, copy of the collector's reply to the letter of Francis A. Wilson, giving notice of decedent's death, Exhibit 74. and Exhibit 43, regarding dissolutions of the partnership of Wilson Bros. & Co. The substance of the collector's reply appears elsewhere in the record and the notice of dissolution of one of the partnerships is cumulative in effect and is also established by other facts of record, so that decision need not be delayed by these omissions.

Since the respondent has collected by jeopardy assessment and distraint an amount largely in excess of the deficiency and penalty which will result from our determination of estate tax liability, there will be an overpayment in tax. Therefore petitioners' prayer for relief in this respect will be granted, the amount of the overpayment will be determined under Rule 50, and decision will be entered accordingly.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

STERNHAGEN, *J.*, concurs only in the result.

---

TURNER, *J.*, concurring: In my opinion, the reasonable and logical interpretation of sections 310 and 311 of the Revenue Act of 1926 is that existence or nonexistence of limitation on the period within which estate tax may be assessed depends solely on the act or failure to act by the party charged under section 304 and the regulations thereunder with the filing of the estate tax return, and the adequacy or inadequacy of a return made by a collector or by the Commissioner under section 3176 of the Revised Statutes, as amended, has nothing to do with it.

SMITH and OPPER, *JJ.*, agree with the above.

---

MELLOTT, *J.*, concurring: Implicit in the language of the majority are two theories with which I do not agree: (1) That the filing of a return by the Commissioner under section 3176 R. S. may start the running of the statute of limitations; and (2) that the Commissioner may combine in one notice of deficiency and that we may hear and decide in one proceeding the joint, primary and representative liability of the executors and the several, secondary and personal liabilities of the same individuals as transferees. As to the first, we have already announced in this case [1] that the statute of limitations begins to run only if a return, which is not false or fraudulent, is filed by the executor. If extant decisions of this tribunal stand for any other view, then I think they should be overruled. As to the second, orderly procedure requires that the Commissioner elect whether he will determine a

---

[1] See memorandum of Judge Van Fossan accompanying orders overruling petitioners' motion for judgment on the pleadings.

liability against the estate, which may be overturned only if the petitioners sustain their burden of proof, or proceed against the transferees in the manner contemplated by the statute (sec. 316, Revenue Act of 1926), assuming the attendant burden of proof. For a fuller discussion of the principles which the instant proceedings ignore or discard see *Edward Michael*, 22 B. T. A. 639; affd., 75 Fed. (2d) 966; certiorari denied, 296 U. S. 579; *Milk Bottle Exchange, Inc.*, 43 B. T. A. 33; Paul, Federal Estate and Gift Taxation, § 13.47 and 13.48; Mertens, Law of Federal Income Taxation, ch. 53.

MURDOCK, VAN FOSSAN, and HARRON, *JJ.*, agree with the above.
LEECH, *J.*, concurs with the second point herein.