ESTATE OF FRANK K. SULLIVAN, DECEASED, BY FLOYD K. SULLIVAN, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12476. Promulgated May 27, 1948.

*Philip C. Jones, Esq.*, and *Albert Mosher, Esq.*, for the petitioner.
*Douglas L. Barnes, Esq.*, for the respondent.

## OPINION.

DISNEY, *Judge*: In his determination of the deficiency the respondent included the value of the property involved in the gift to the son on November 19, 1943, and in the agreement of November 24, 1943, between the decedent and his wife, in decedent's gross estate as transfers made in contemplation of death. The notice of deficiency also recited that one-half of the value of the United States savings bonds, amount $25,013.80, including interest, which was not included in the estate tax return by petitioner, was included in the gross estate under the provisions of section 811 (e) of the Internal Revenue Code.

The contentions of the petitioner are, in substance, that the transfers were not made in contemplation of death; that the property trans-

ferred to the son was held as joint tenants and, accordingly, if the transfer was made in contemplation of death, only one-half of the value thereof is includible in gross estate under section 811 (c); that the remaining property was held, at death, as tenants in common, pursuant to the provisions of the agreement executed on November 24, 1943, with the result that only one-half of the value thereof is subject to tax, and that if the transfer was made in contemplation of death, it was made for an adequate and full consideration in money or money's worth. The parties have agreed upon the value of the property involved in the transfers.

The primary question is whether the transfers were made in contemplation of death. Aside from the statutory presumption raised by section 811 (c), which petitioner asserts for specified reasons is not applicable, the petitioner had the burden of showing the respondent's action to be erroneous.

### Contemplation of Death.

### Gift to Son.

Concerning the transfers on November 19, 1943, the petitioner contends that the dominant motive was associated with life, rather than death, and, accordingly they fall without the statute. The motive relied upon was a desire to supplement the property of the donee in order to give him, during the donor's lifetime, income to meet financial obligations.

The evidence contains no record of unusual generosity on the part of decedent towards his son, his only child, particularly in view of his financial standing. He had $100,000 in cash when he took up a domicile in California in 1922, and his son was 23 years old. In 1930, the year of birth of decedent's granddaughter, the decedent had a house built on a lot and gave it to his son. The value of the gift is not shown. The next year the son entered the brokerage business with a partner. Such financial assistance as decedent gave his son in the new venture consisted of a loan of securities for use by the firm as collateral. Upon the dissolution of the firm in 1934, the son and his wife conveyed to his parents, in settlement of a debt of about $12,000, a house of a value of about $7,500, which the son's wife had inherited. The loan and its partial repayment by the means taken are opposed to the idea that the decedent had a desire at that time to share his wealth with his son for purposes associated with his own life. Without more facts on the point, we can not infer that the decedent intended the difference between the value of the property conveyed and the amount of the indebtedness to him as a gift to his son.

There is no evidence of other gifts or financial assistance of any kind to the son, despite operation losses in the brokerage business, until the transfers in issue. The donee testified that his parents informed him

that they desired to make the transfers to help him meet his financial obligations. Later, in September 1943, decedent's wife informed counsel being consulted concerning the matter that the purpose of the gift was to provide their son with additional income. It does not appear that his need for financial help at that time differed substantially from prior years. In fact, his earnings in 1943 were $740 in excess of income the previous year and almost double his earnings for 1941.

From this whole record we are constrained to believe that the decedent was inclined to deal with his son on a business basis, until shortly before his death. Certainly the conveyance of the property inherited by his daughter-in-law to decedent about 1934, when the son was rather apparently in worse financial condition than in 1943, was a cold business matter.

The amount involved here was not small. The property had a value on January 9, 1944, of $33,526.54, which is about 20 per cent of decedent's gross estate as returned by petitioner and adjusted by the respondent. The transfer of such a proportion of the total wealth of the decedent, under all the circumstances here, indicates a purpose associated with death instead of life.

### Transfers Nov. 24, 1943.

Petitioner contends that these transfers merely severed joint tenancies and created tenancies in common and, therefore, were not made in contemplation of death. The transaction had its inception in advice given the transferors by counsel on November 9, 1943, that it was against their interests to hold property as joint tenants, and, in effect, that if the property were held as tenants in common there would be less value of property for inclusion in gross estate upon the death of the decedent. The action taken manifests a desire of decedent to so arrange all of his property interests as to reduce death taxes. It seems to have been the controlling motive and had a direct relation with what would happen to his property upon death. It has been held under similar circumstances that the transfers were made in contemplation of death. *First Trust & Deposit Co.* v. *Shaughnessy*, 134 Fed. (2d) 940; *Commonwealth Trust Co. of Pittsburgh* v. *Driscoll*, 50 Fed. Supp. 949; affd., 137 Fed. (2d) 653; *Vanderlip* v. *Commissioner*, 155 Fed. (2d) 152, affirming 3 T. C. 358. In *Allen* v. *Trust Co. of Georgia*, 326 U. S. 630, the Court said, with respect to the leading case, *United States* v. *Wells*, 283 U. S. 102, that "the statute is satisfied, it is said, where for any reason the decedent becomes concerned about what will happen to his property at his death and as a result takes action to control or in some manner affect its devolution."

970

The decedent enjoyed good health for a man of his age until the development of a cancer at a time not disclosed by the record. He started to lose weight a year before the transfers and lost from eight to ten pounds during a period of two months before November 18, 1943, on which date he consulted a physician for the first time about the condition of his health. At that time he had not felt well for about three weeks and had had jaundice for two or three days. Whether the consultation occurred after or before he requested counsel to draft documents for the transfers does not appear in the evidence and we may not assume that the request preceded the visit to the doctor. In any event, the transfer papers had not been executed and the decedent signed them at the earliest possible time after his discharge, on November 24, 1943, from confinement in a hospital for three days for a more complete examination of his physical condition.

The experience the decedent was undergoing was unusual for him and constituted logical grounds for becoming apprehensive about its outcome, particularly in view of his age and past good health. The cancerous condition then existing caused his death less than two months later. It does not appear from the evidence whether he knew he had a cancer.

Further discussion of the point would serve no useful purpose. Our conclusion is that the petitioner has failed to establish error in the action of respondent in treating the transfers, both to his son and to his wife by severance of joint tenancy, as having been made in contemplation of death.

### Consideration for Transfers on Nov. 24, 1943.

Section 811 (c) of the code excludes from its general provisions, transfers made in "a bona fide sale for an adequate and full consideration in money or money's worth." Is the transaction here involved to be therefore excepted, though found to be in contemplation of death? We do not, in the first place, find here the characteristics of a bona fide sale in the transaction. The transfers, as already pointed out, had their inception in a desire, obviously mutual, to lessen death duties while contemplating death. No bargaining at arms' length, or otherwise, appears. The petitioner concedes that the interest of the survivor was acquired by her in the first instance by a gift from the decedent. Neither does it appear that either party gave any thought to whether he or she was receiving value, adequate or inadequate, for property interests transferred. The nature of the transaction and its purpose was one that did not contemplate anything more than reciprocal transfers without regard to consideration of any kind. It was simply a family arrangement for the protection of their estates, as they regarded them. *Phillips* v. *Gnichtel*, 27 Fed. (2d) 662; *Giannini* v. *Commissioner*, 148 Fed. (2d) 285.

Moreover, the division of the joint property into interests in common was not sale in the ordinary sense in which we think the statute used the term. The word "sell," in its ordinary sense, means a transfer of property for a fixed price in money or its equivalent. *United States* v. *Benedict*, 280 Fed. 76, 80, quoted in *Hale* v. *Helvering*, 85 Fed. (2d) 819. No price was fixed here. It will be noted that section 811 (c) does not include "exchange"; and the most that could be said of the division of the joint estates would be that it was in a sense exchange. Nor was the transaction for the necessary consideration. Assuming that the division of interests had such reciprocity as to constitute a good consideration between the parties, we think it was not the adequate and full consideration in money or money's worth intended by the statute. A sale for full adequate consideration in money or its worth would not diminish the estate of the transferor, but leave it in effect the same as before, therefore, such a sale would be unobjectionable to the estate tax law.

In *Latty* v. *Commissioner*, 62 Fed. (2d) 952, "in money or money's worth" is held to indicate, under section 303 of the Revenue Act of 1924, as to claims against estates, "a consideration, which at the time either augmented the estate of the decedent, granted to him some right or privilege he did not possess before, or operated to discharge a then existing claim * * *. * * * A 'sale' implies the receipt 'of money or money's worth' as the purchase price of that conveyed— the continued maintenance of the estate of the vendor at approximately its preexisting value. A testamentary disposition is in the nature of a bounty and the antithesis of a sale * * *." In *Commissioner* v. *Porter*, 92 Fed. (2d) 426, construing section 303 (a) (1) of the Revenue Act of 1926 as to claims, it is held that "adequate and full consideration in money or money's worth" was "to prevent a man from diminishing his taxable estate by creating obligations not meant correspondingly to increase it but intended as gifts or a means of distributing it after his death. * * *" In *Helvering* v. *Robinette*, 129 Fed. (2d) 832, an exchange of promises relative to testamentary disposition was held not to be adequate and full consideration in money or money's worth within the law of gift tax. Here it seems clear that for estate tax purposes the decedent's estate was diminished, for he surrendered for the purposes of estate tax law more than he received, because, as the parties have stipulated, in the absence of the transfer here involved the entire joint estate would be taxable under the provisions of section 811 (e), whereas, under the transfer or agreement made he received only a half interest, by tenancy in common, and therefore only that amount would be taxable estate. The situation is in some respects similar to that in *Phillips* v. *Gnichtel, supra,* where it was pointed out that the deceased husband had transferred to his wife, in contemplation of death as here, more

than he received from her and that such was not a sale for "fair consideration in money or money's worth" within sections 301 and 302 (c) of the Revenue Act of 1924. The arrangement was held "to savor more of testamentary disposition than of bargain and sale such as the statute contemplates in relieving a decedent's estate from taxation." In our view the transaction between the decedent and his wife in this matter did not comprise bona fide sale for full and adequate consideration in money or money's worth within section 811 (c), and, therefore, may not be excepted from transfers taxable because in contemplation of death.

### Interest of Decedent in Property Transferred.

Concerning the transfers to the son, petitioner argues that all of the property involved was, in accordance with local law, held as joint tenants, the securities standing in decedent's name alone being such property by reason of investment and reinvestment of like property; therefore, only one-half of the gift was made by the decedent. It is argued that the agreement of November 24, 1943, converted all of their remaining jointly held property into tenancies in common, including the real estate held in decedent's name, and, as title was so held by them at decedent's death, no more than one-half of the value of the property is includible in gross estate.

The application of Federal taxing statutes to property interests is not always determined by local law, and the statutory provisions governing the question here are not dependent upon local law. *Tyler* v. *United States*, 281 U. S. 497; *United States* v. *Pelzer*, 312 U. S. 399; *Fernandez* v. *Weiner*, 326 U. S. 340.

In *Commonwealth Trust Co. of Pittsburgh* v. *Driscoll*, 50 Fed. Supp. 249; affirmed per curiam, 137 Fed. (2d) 563, the decedent conveyed two parcels of real property, title to which was in his name, to himself and his wife as tenants by the entirety. Later they conveyed the properties to the wife alone. The court held that the transfers to the wife alone were made in contemplation of death and the value thereof was includible in the decedent's estate, he having purchased the properties with his own funds.

In *Estate of William Macpherson Hornor*, 44 B. T. A. 1136, the decedent conveyed property to himself and his wife as tenants by the entirety. The wife had not contributed anything towards the cost and paid nothing in connection with the conveyance to the entirety. Later, they conveyed the property to themselves and another as trustees, with the right to receive the income therefrom during their joint lives and the life of the survivor and subject to a joint power of revocation and withdrawal of the trust estate during their joint lives. Later, other property was conveyed to the trust. We held that the

property in trust was includible in gross estate under section 302 (c) of the Revenue Act of 1926, as a transfer in contemplation of death and section 302 (e), on the ground that the trust was ineffective to avoid the provisions thereof. On appeal, the court found it unnecessary to decide whether any transfer was made in contemplation of death and held that the transfer was within section 302 (e).

Section 811 (c) taxes at death the value at that time of the property previously transferred in contemplation, as here, of the event. In *Inglehart* v. *Commissioner*, 77 Fed. (2d) 704, the court said:

* * * For the purposes of the tax, property transferred by the decedent in contemplation of death is in the same category as it would have been if the transfer had not been made and the transferred property had continued to be owned by the decedent up to the time of his death * * *.

To the same effect are *In re Kroger's Estate*, 145 Fed. (2d) 901; *Estate of Nathalie Koussevitsky*, 5 T. C. 650, 660, and *Estate of William Macpherson Hornor*, *supra*. If we ignore the transfers on the two dates in November 1943, we find decedent holding at death property in his own name and property as joint tenant with his wife.

Section 811 (e) (1) provides for inclusion in gross estate of the value of property held as joint tenants by the decedent and any other person "except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth; * * *"

The intent of section 811 (e) (1) is to include the full value of joint tenancy property in gross estate to the extent that it or the consideration therefor is traceable to the decedent. *Foster* v. *Commissioner*, 90 Fed. (2d) 486; affirmed per curiam, 303 U. S. 618; *United States* v. *Jacobs*, 306 U. S. 363; *Estate of Joseph A. Brudermann*, 10 T. C. 560.

Aside from the concession of petitioner that the surviving tenant acquired her interest by gift from the decedent, nothing herein is contrary to the view that the original source of all of the property was the proceeds of the sale, by decedent, of his wholly owned business in 1918. None of the property or consideration therefor is shown by petitioner to have been contributed by the wife. Gifts made by a decedent and subsequently contributed by the donee to the joint tenancy with the donor do not serve to remove any of the interest taxable to the decedent. *Dimroch* v. *Corwin*, 306 U. S. 363. Petitioner has failed in his proof that the decedent did not supply all of the property and the consideration therefor.

The parties have stipulated that if the decedent had died immediately prior to the execution of the agreement of November 24, 1943, and the making of the gift, all of the property, except that in the name

of decedent alone, would have been includible in the gross estate of decedent under section 811 (e) (1) of the code, and that the property standing in his name alone would have been includible in his gross estate under section 811 (e) (1), or 811 (a) of the code. The transfers did not, under the circumstances here, serve to make the situation any different from what it would have been if the decedent had died immediately before making the gift to his son and executing the agreement on November 24, 1943, with his wife. Neither did the withdrawal by decedent's wife from a joint bank account on December 20, 1943, of $2,400, and the subsequent deposit of the amount in her name in another bank, operate to avoid tax on the amount as part of the gross estate of decedent, *Estate of Harold W. Grant*, 1 T. C. 731. See *Estate of Henry Wilson*, 2 T. C. 1059. Never having contributed any of the joint property or consideration, the surviving tenant may not be treated under section 811 (e) as the owner of any interest in the property.

Accordingly, we find no error in the respondent's determination with respect to the transfers in question.

Reviewed by the Court.

*Decision will be entered for the respondent.*