CAMILLE R. GUMP, EXECUTRIX, AND EDWIN LETTS OLIVER, EXECUTOR OF THE ESTATE OF ALFRED S. GUMP, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90656. Promulgated June 25, 1940.

*Chas. A. Christin, Esq.*, and *Myrtile Cerf, C. P. A.*, for the petitioners.

*T. M. Mather, Esq.*, and *Alva C. Baird, Esq.*, for the respondent.

## OPINION.

HARRON: The first question to be determined is whether the respondent erred in including in the gross estate of decedent the value of all the community property. The petitioners contend that at the time of his death in 1934 the decedent had no interest in the wife's share of the community property. They rely upon the provisions of section 1401 of the Civil Code of California,[1] later section 201 of the Probate Code of California. It is argued that under that statute one-half of the community estate "belongs to" the wife. It is further argued that, since the husband's power of testamentary disposition of community property is limited to one-half thereof, he has no interest in the other half.

This question has been considered many times by the Board and courts. It has been repeatedly held that the interest of a surviving wife in community property acquired prior to July 29, 1927, is under the laws of California no more than a mere expectancy, although her interest may be more definite than that of an ordinary heir, and that her share in the community property passes to her by succession and, therefore, is includable in the gross estate of the deceased husband and subject to the Federal estate tax. *Estate of Philip McRae*, 30 B. T. A. 1087; *Mary M. Buck et al., Executors*, 25 B. T. A. 780; *Alexander T. Sokolow et al., Executors*, 22 B. T. A. 349; *Lulu Vance Baumgartner*, 21 B. T. A. 623; *L. G. Wolfe, Administrator*, 20 B. T. A. 1065; *Eleanor Jane Zeile, Executrix*, 20 B. T. A. 1039; *Mercantile Trust Co. of California, Administrator*, 20 B. T. A. 927; *Elizabeth W. Driver, Executrix*, 20 B. T. A. 910; *Mattie Belle Wallace, Administratrix*, 20 B. T. A. 862; *Henrietta Biewener, Executrix*, 20 B. T. A. 808; *Helena Liebes, Executrix*, 20 B. T. A. 731; *Agnes Silverberg, Executrix*, 20 B. T. A. 716; *Lillian M. Wheeler, Executrix*, 20 B. T. A. 695; *American Trust Co. et al., Executors*, 20 B. T. A. 666; *Joseph P. Levy et al., Executors*, 18 B. T. A. 337; *Katherina Richter, Executrix*, 16 B. T. A. 936; *Griffith*

---

[1] SEC. 1401. *Community property on death of spouse.* Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of section one thousand four hundred two of this code.

*Henshaw, Executor*, 12 B. T. A. 1441; affd., 31 Fed. (2d) 946; certiorari denied, 280 U. S. 565; *Mary Brent, Executrix*, 6 B. T. A. 143; *Talcott v. United States*, 23 Fed. (2d) 897; certiorari denied, 277 U. S. 604; *Title Insurance & Trust Co.* v. *Goodcell*, 60 Fed. (2d) 803; certiorari denied, 288 U. S. 613; *United States* v. *Robbins*, 269 U. S. 315; *Mark* v. *Title Guarantee & Trust Co.*, 122 Cal. App. 301; 9 Pac. (2d) 839.

The petitioner's contention that a part of the gross estate as determined by the respondent constitutes property in which the surviving wife had an interest of a tenant in common is wholly without merit.

Exhibit 5 introduced in evidence by the petitioners is a schedule listing assets of a value of $714,884.05 included in the gross estate of the decedent which it is claimed were acquired as the proceeds of, or with the moneys received from Abraham L. Gump under the contracts of February 9 and December 23, 1929. This amount of $714,-884.05 includes the unpaid installments under the contracts of $384,-994.45. It is the contention of the petitioners that the difference between $714,884.05 and $384,994.45, or $329,889.60 constitutes property held as tenants in common and that therefore one-half thereof, or $164,944.80, in addition to the one-half of the value of the unpaid installment obligations, should be excluded from the gross estate of decedent.

It is stated on brief that by the terms of the contracts of February 9 and December 23, 1929, the entire consideration of $1,184,994.45 was payable to the decedent and his wife, that there was a complete merger of their interests for a single consideration, and that they took the consideration in undivided and unallocated equal interests. It is argued that therefore the property to the value of $714,884.05 was held as tenants in common under section 164 of the Civil Code of California 1929.[2] In other words, petitioners claim in effect that the contracts of sale made in 1929 converted community property into property held as tenants in common.

The above statement of petitioners pertaining to the terms of the contracts is erroneous in fact. The total consideration under the contracts, although the stock sold included 46 shares of stock of the Gump Co. therein stated to be owned by Camille R. Gump, was expressly made payable to the decedent. The seven notes were made

---

[2] Sec. 164. *Property acquired after marriage.* All other property acquired after marriage by either husband or wife, or both, including real property situated in this state, and personal property wherever situated, heretofore or hereafter acquired while domiciled elsewhere, which would not have been separate property of either if acquired while domiciled in this state is community property; but whenever any real or personal property, or any interest therein or encumbrance thereon, is acquired by a married woman by an instrument in writing the presumption is that the same is her separate property, *and if acquired by such married woman and her husband, or by her and any other person, the presumption is that she takes the part acquired by her, as tenant in common, unless a different intention is expressed in the instrument;* and the presumptions in this section mentioned are conclusive in favor of a purchaser, encumbrancer, payor, or any other person dealing with such married woman, in good faith and for a valuable consideration. [Emphasis supplied.]

payable to the order of the decedent. It is reasonable to infer from the entire record that decedent's wife merely joined in the agreements to evince her consent to the sale of her 46 shares by the decedent as well as the sale of the other stock involved in which she had a community interest, although the contracts expressly state that the decedent was the owner thereof. See *Riley* v. *Gordon*, 30 Pac. (2d) 617 (Cal., 1934), wherein it is held that previous to 1927 title to community property was vested in the husband subject to the statutory restraints upon his power to alienate or encumber the same without the wife's consent and the power given her to devise a portion thereof, and that a wife's joinder in a deed covering community property acquired prior to 1927 was in legal effect but an expression of her assent to the transfer by her husband. Furthermore, the court in the probate of the estate found that the entire estate of decedent, as inventoried by the executors, in which the property now claimed to be held as tenant in common was included, was community property, excepting $18,688.16, which amount was ordered to be paid to decedent's wife for the 46 shares of Gump Co. stock held in trust and sold by decedent under the contracts made in 1929. State law creates legal interests and is controlling as to the rights of legatees and beneficiaries and in the administration of estates and testamentary trusts. *Burnet* v. *Harmel*, 287 U. S. 103; *Blair* v. *Commissioner*, 300 U. S. 5; *Freuler* v. *Helvering*, 291 U. S. 35; *Susan B. Armstrong*, 38 B. T. A. 658.

The decedent acquired the stock sold under the contracts executed in 1929 prior to July 29, 1927. Assets of the value of $714,884.05 out of the total gross estate of $802,737.41 were admittedly acquired as the proceeds of or with moneys received under such contracts. The character of the stock sold determines the character of the property acquired with the consideration received for the stock sold in 1929. McKay's Community Property § 518; *Hannah* v. *Swift*, 61 Fed. (2d) 307.

We conclude that the gross estate of decedent constituted the community property of decedent and his wife, which, so far as the record shows, had all been acquired prior to July 29, 1927. Upon the authority above cited, such property is includable in its entirety in the gross estate of decedent for the purpose of Federal estate taxation.

We will now consider the question as to the value to be included in decedent's gross estate of the notes of Abraham L. Gump, in the aggregate face value of $384,994.45, which represent the unpaid installments under the contracts made in 1929.

It is petitioners' contention that the value of the installment obligations to be included in the gross estate of decedent should not be in excess of $49,961.12, or one-half of the cost basis of $99,992.23 determined by the respondent for computing the gain or taxable

income to the estate and beneficiaries upon payments made on such obligations. We have determined that the notes constituted community property of decedent and his wife acquired prior to July 29, 1927. Whatever value is determined is, therefore, includable in the gross estate of decedent in its entirety.

The basis of petitioners' contention is that any amount in excess of $99,992.23, the cost basis for the determination of gain, represents *unrealized gain* and hence can not be regarded as an asset or capital of decedent's estate for Federal estate tax purpose.

The petitioners overlook the fact that the sale of the stock was made in 1929 and that the sale gave rise to taxable income in 1929. The entire gain was then realized and taxable to decedent. However, under section 44 of the Revenue Act of 1928, the decedent was given an option to pay income tax on only a part of the realized gain. The exercise of the option merely deferred taxation. *Nuckolls* v. *United States*, 76 Fed. (2d) 357; *Alexander M. Crane et al., Executors*, 30 B. T. A. 29; affd., 76 Fed. (2d) 99. As stated in the Report of the Committee on Ways and Means, No. 2, p. 16, and the Report of the Committee on Finance, No. 960, p. 24, "The installment basis accords the taxpayer the privilege of deferring the reporting at the time of sale of the gain realized until such time as the deferred cash payments are made."

Subsection (d) of section 44, 1928 Act, was enacted to prevent evasion of income taxes in connection with the transmission by death or other disposition of installment obligations. Section 302 of the Revenue Act of 1926 provides that the "value of the gross estate of decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated." Upon transmission of installment obligations by death, this permitted the estate, legatee, or beneficiary of decedent to obtain a greatly increased basis in reporting gain on payments received subsequent to the time of death. All gain, except as to the gain reported on installments paid before decedent's death, would thereby escape income tax. *Crane* v. *Helvering*, 76 Fed. (2d) 99.

Considerable hardship was experienced in cases of decedents who died possessed of substantial amounts of installment obligations on account of the provisions of subsection (d), *supra*, which required the reporting as income in the final income tax return of decedent of all profits theretofore not reported. Therefore a provision [3] was added

---

[3] SEC. 44. INSTALLMENT BASIS.

　　　*　　　*　　　*　　　*　　　*　　　*　　　*

(d) * * * This subsection shall not apply to the transmission at death of installment obligations if there is filed with the Commissioner, at such time as he may by regulation prescribe, a bond in such amount and with such sureties as he may deem necessary, conditioned upon the return as income, by the person receiving any payment on such obligations, of the same proportion of such payment as would be returnable as income by the decedent if he had lived and had received such payment.

to that subsection in the Revenue Act of 1932.[4] This provision permitted the return as income by the person receiving any payment on such obligations of the amount which would have been returnable by the decedent had he lived and received the payment instead of reporting all the profits in the final income tax return of decedent. No change, however, was made in section 302, *supra*, pertaining to estate taxes, and the value of decedent's estate to be included in gross estate for estate tax purposes remained the "value at the time of death." Installment obligations were not excepted from that rule.

The individual and his estate after his death are two separate entities. *Nichols* v. *United States*, 64 Ct. Cls. 241; certiorari denied, 277 U. S. 584. The estate tax and the income tax are wholly different in concept and theory and "may impinge upon each other in ultimate incidence by striking at the beneficiary so as to diminish first his inheritance and then his income therefrom." *George D. Widener*, 8 B. T. A. 651; affd., 33 Fed. (2d) 833. It may be pointed out that section 44 is included in the revenue acts under the title "Income Tax", whereas section 302 is included under the title "Estate Tax."

It is our conclusion that the notes of Abraham L. Gump represented capital or corpus of the estate of decedent. Since there is no evidence that the value of the notes at the time of death of decedent was less than their face value, the inclusion of the notes in gross estate at their face value must be approved.

The petitioners next contend that, if the installment obligations are held to be a part of the decedent's gross estate, then they are entitled to a credit of the amount of the income tax which would have been payable on the unreported profit of $285,072.22 as represented by the unpaid notes at the time of his death if the executors had not availed themselves of the privilege granted in section 44 (d). This contention is wholly without merit. The executors availed themselves of the privilege granted in section 44 (d) and filed the bond required therein, so that they were not required to report in the final return of the decedent the gain on the transaction in 1929 not theretofore reported by the decedent. They did not include such gain as income in the final return for the period from January 1 to January 23, 1934, and no tax was paid by them in behalf of decedent on such gain. They are claiming credit for taxes which they never paid or intended to pay by availing themselves of the privilege granted in section 44 (d), *supra*. No statutory provision for the allowance of such a credit has been brought to our attention. The case of *Bull* v. *United States*, 295 U. S. 247, relied upon by petitioners, is not controlling here. It is distinguishable on the facts. In that case the Commissioner treated profits received by the estate of a decedent as taxable income

---

[4] Report of Committee on Finance, No. 665, 72d Cong., 1st sess., p. 21.

for income tax purposes and also as capital of the estate for estate tax purposes. The profits involved were profits realized by the estate after the death of decedent and not profits realized by decedent prior to his death, as here involved. Furthermore, in the *Bull* case, the estate taxes allowed as a credit or recoupment against income taxes of the estate had been assessed and paid. See *Edmonds* v. *Commissioner*, 90 Fed. (2d) 14.

The action of respondent in refusing to allow the amount of $25,877.59, representing taxes not assessed or paid, either as a credit or deduction, is approved.

The respondent disallowed as a deduction a pledge of $200 made by decedent to the Community Chest of San Francisco which was paid by his executors. The facts are not in dispute. The Board has consistently held that monetary pledges of others constituted an "adequate and full consideration in money or money's worth" within the meaning of section 303 (a) (1) of the Revenue Act of 1926. *Jeptha H. Wade, Jr., et al., Executors*, 21 B. T. A. 339; *David A. Reed et al., Executors*, 24 B. T. A. 166; *Robert A. Taft, Executor*, 33 B. T. A. 671; affd., 92 Fed. (2d) 667; *Maude L. Porter et al., Executors*, 34 B. T. A. 798; affd., 92 Fed. (2d) 426; *Edna F. Hays et al., Executors*, 34 B. T. A. 808; *Florence Scofield Stone et al., Executrices*, 38 B. T. A. 51; *Commissioner* v. *Bryn Mawr Trust Co.*, 87 Fed. (2d) 607. It is held that the petitioners are entitled to the claimed deduction in the amount of $200.

It was stipulated that petitioners are entitled to a deduction of the amount of $1,635.06 for additional income taxes of decedent for 1933. Effect will be given to this stipulation on recomputation of the estate tax under Rule 50.

*Decision will be entered under Rule 50.*