ESTATE OF EDWIN W. RICKENBERG, DECEASED, LORAINE T. RICKEN-
BERG, EXECUTRIX, PETITIONER, v. COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 11494.    Promulgated July 7, 1948.

*Charles J. Munz, Jr., Esq.*, and *Sidney R. Reed* for the petitioner.
*A. J. Hurley, Esq.*, for the respondent.

4

OPINION.

DISNEY, *Judge*: The respondent determined in the determination of deficiency that the property transferred by the decedent on December 2, 1942, should be included in his gross estate under the provisions of section 811 (c) and 811 (d) (5) of the Internal Revenue Code.[1] Error

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

(a) DECEDENT'S INTEREST.—To the extent of the interest therein of the decedent at the time of his death.

\* \* \* \* \* \* \*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter:

\* \* \* \* \* \* \*

(d) (5) [As added by section 402 (a) of the Revenue Act of 1942, effective as of October 22, 1942.] TRANSFERS OF COMMUNITY PROPERTY IN CONTEMPLATION OF DEATH, ETC.—For the purposes of this subsection and subsection (c), a transfer of property held as community

in such determination must be shown by the petitioner. *Welch* v. *Helvering*, 290 U. S. 111. In our opinion, the petitioner has not so shown. The respondent, on brief, does not contend that the transfers were prompted by any apprehension or premonition on the part of the decedent of imminent death. The contention is that the sole motive inducing the decedent to make the transfers was associated with death rather than life, and more particularly that the decedent's purpose was solely to avoid estate tax to which the property would otherwise be subject at his death. Considering this attitude on the part of the respondent, together with the fact that is obvious from the evidence that the petitioner had no reason, on December 2, 1942, to apprehend the heart attack which took his life about eighteen months later, we examine only, in this respect, the question as to whether there was such motive and intent to escape estate taxes as to bring the transfer within the ban of the statute. The respective briefs, in effect, agree that such motive subjects the property to estate tax, for both parties cite several cases to that effect. See *Updike* v. *Commissioner*, 88 Fed. (2d) 807; *Vanderlip* v. *Commissioner*, 155 Fed. (2d) 152, affirming 3 T. C. 358; *First Trust & Deposit Co.* v. *Shaughnessy*, 134 Fed. (2d) 940. The contemplation of death is not necessarily that of imminent death. *United States* v. *Wells*, 283 U. S. 102. The petitioner contends, however, that there is no evidence to establish that the decedent's dominant motive was to escape estate taxes. The question is one of fact. We have carefully considered what transpired in the autumn of 1942, ending with the transfers in question, and we think it is self-evident on the face of the record that the controlling and dominant purpose was to escape estate taxes. It is unnecessary to reiterate the facts which we have above set forth, and we shall here only note that it is obvious that the decedent was following the advice of Jones, the insurance agent; that Jones outlined a plan by which estate taxes could be escaped; that he had this in mind when on October 30, at the decedent's request, he put the matters which he and the decedent had discussed into the form of a letter, for he therein mentioned substantial savings in tax and administration costs and arrangements of estates to effect such savings in tax and costs, and again twice mentioned estate expenses and estate costs. At that time Jones had not learned of the change in gift tax, so that the contention that gift tax saving was in mind is without foundation. This is indicated by the fact that on November 11 Jones inquired of the attorney, Toll, stating the Rickenberg case, whether gift tax would be payable. This letter

property by the decedent and surviving spouse under the law of any State, Territory, or possession of the United States, or any foreign country, shall be considered to have been made by the decedent, except such part thereof as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or from separate property of the surviving spouse.

too discloses the plan to save estate taxes, since it inquires whether the plan was practical in the light of the new estate tax and states that it would appear more economical than leaving the property in the husband's name or in joint tenancy. Toll's answer on November 13, 1942, goes into detail as to saving of estate tax. When Jones and the decedent went to the attorney, Hickson, it was Jones who outlined what was to be done, telling Hickson they wanted an agreement drafted as suggested by Jones. Though it is true that the desire was that the instrument be signed before January 1, 1943, this by no means demonstrates that the idea was to escape gift tax which would become effective on that date, but only that an early execution of the instruments was desired for that purpose. The idea that the object was escape of gift tax is rendered almost absurd by the fact that if no transfer had been made no gift tax would have been incurred. In *Commonwealth Trust Co. of Pittsburgh* v. *Driscoll*, 137 Fed. (2d) 653, the Circuit Court affirmed 50 Fed. Supp. 949, on the reasoning of the District Court and without further opinion. In that case the decedent, as in this one, was active in his business until long after the execution of the transfer in question, so that, as here, the element of contemplation of imminent death was not present. Five years before his death he made the transfer in question, transferring property which had been conveyed to himself and his wife as tenants by the entirety. The court, in effect, was able to see no reason for the transfer except to escape the payment of estate taxes thereon. Here there is much more positive indication that the controlling motive was to escape estate taxes. Though there is contention that escape of income taxes was also in the mind of Jones, the testimony in that regard is unsatisfactory and unconvincing, and it is clear to us that such was at most only the minor purpose. We conclude, and hold without further discussion of the facts above found, that the agreement of December 2, 1942, between the decedent and his wife was for the primary and dominant purpose of escaping estate taxes and was in contemplation of death within the purview of section 811 (c) of the Internal Revenue Code.

The petitioner contends, however, that the contract here in question comes within the exception stated in section 811 (c), that is, it was a bona fide sale for an adequate and full consideration in money or money's worth. This we hold to be untenable for two reasons. First, in our view, there was no sale. In its ordinary sense the term means transfer for a fixed price in money or its equivalent. *United States* v. *Benedict*, 280 Fed. 76, 80, quoted in *Hale* v. *Helvering*, 85 Fed. (2d) 819; *Estate of Frank K. Sullivan*, 10 T. C. 961. The act does not include the word "exchange," and the fact is significant. Second, under section 812 (b) (5) of the Internal Revenue Code, relinquishment of marital rights in the decedent's property shall not be

considered to any extent a consideration in money or money's worth. We have found as a fact that the property had been held in community. Therefore, the agreement of division of property rights on the part of the wife was an agreement to relinquish "marital rights in the decedent's property," since the right to community property arises under California law because of the marital estate.

Though the wife's community property interest is not acquired from the estate of her deceased husband, *Estate of James F. Waters*, 3 T. C. 407, her interest during the lifetime of herself and husband is a beneficial right extending to all the property, that is, to his interest as well as hers. For instance, he may not dispose of the community real estate, or encumber it (except to lease for less than a year) without her joinder in the conveyance. Sec. 172 (a), California Civil Code. It was as to just this interest in his portion of the community estate that the relinquishment by the agreement here in question went; therefore, clearly there was relinquishment of marital rights in the husband's property. Moreover, any community property acquired prior to July 29, 1927, belonged to the husband, the wife having only an expectancy, and was subject to administration in his estate. *Rosenberg* v. *Commissioner*, 115 Fed. (2d) 910. The record here does not show that the property was not acquired prior to July 29, 1927, showing only that it was acquired during the period of marriage. Our reasons for holding that the property was community require no lengthy discussion; for, since the entire property was acquired during marriage, and, so far as the record shows, in California—and certainly largely in California—and there is no contention or proof that any part of it was received by the wife as compensation for personal services actually rendered by her or derived originally from such compensation or from separate property of the surviving spouse, within the language of section 811 (e) (2) of the Internal Revenue Code (as added by section 402 (b) (2) of the Revenue Act of 1942), we find nothing in this record to indicate that the property was other than community. The agreement of December 2, 1942, calls it community property. The parties are not in disagreement that the mere fact that the title was formerly held in joint estate, the survivor to take, does not affect the real nature of the holding. There is some testimony that they considered that they held it "share and share alike" or "fifty-fifty," but with other expressions that they owned it "together," it is clear that there is no negation of community property, as we have concluded and find.

The third reason for our holding that the transfer on December 2, 1942, to the decedent's wife was not a bona fide sale for adequate and full consideration in money or money's worth is that such consideration has been held to be one which leaves intact the estate of the decedent. In short, the intent of the exception stated in section 811 (c)

is that if the transfer of property from a decedent brought into his estate the equivalent thereof, the estate, of course, was not diminished. *Latty* v. *Commissioner*, 62 Fed. (2d) 952; *Commissioner* v. *Porter*, 92 Fed. (2d) 426; *Phillips* v. *Gnichtel*, 27 Fed. (2d) 662; *Helvering* v. *Robinette*, 129 Fed. (2d) 832; *Estate of Frank K. Sullivan*, *supra*. The petitioner's estate here, had there been no transfer of December 2, 1942, would have included the community property. It would have included the property even though it was regarded as joint estate. After that transfer, decedent's estate, except for the application of section 811 (c), consisted of one-half of the property transferred. The diminution of the estate and the lack of the necessary consideration in money or money's worth can not be doubted. We, therefore, hold that the transfer does not come within the exception stated in section 811 (c).

The parties have agreed upon all values involved. We find, therefore, no error in the determination of the Commissioner. However, because of expenses incurred in connection with the administration of the estate and this appeal which are not yet determinable, and as to which the parties seem to be in no disagreement,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

***

HILL, *J.*, dissenting: In the majority opinion, under the heading "Findings of Fact," appears the following conclusion of law: "The property of the decedent and his wife had been held in community prior thereto." I accept this conclusion as correct, whether it be called one of fact or of law. Also under the heading "Findings of Fact" in the majority opinion appears the following:

The agreement of December 2, 1942, dividing the property into tenancy in common did not constitute a bona fide sale for full and adequate consideration in money or money's worth.

In view of my concurrence with the dissent of Judge Johnson entered herein, I shall confine my discussion to that phase of the majority opinion indicated in the above two quoted statements therefrom and shall be content with pointing out little more than what to me appears to be a fundamental misconception of the character of title to community property. Such misconception is manifest from the following excerpt from the majority opinion:

\* \* \* First, under section 812 (b) (5) of the Internal Revenue Code, relinquishment of marital rights in the decedent's property shall not be considered to any extent a consideration in money or money's worth. We have found as a fact that the property had been held in community. Therefore, the agreement of division of property rights on the part of the wife was an agreement to relinquish "marital rights in the decedent's property," since the right to community property arises under California law because of the marital estate.

The majority opinion proceeds to its conclusion on the incorrect theory that the property right of decedent's wife in the community property was a "marital right in decedent's property." The community property here in question derived its community character from the law of California applicable to the fact that it was acquired by decedent and his wife while resident in that state. But under the law of California neither the decedent nor his wife had any interest, title or ownership, marital or otherwise, in the other's interest in the community property. While the community character of the property arose from the marriage relationship of decedent and his wife, their respective interests in such property were individually wholly owned. The wife had no interest whatsoever in decedent's interest in the community property and decedent had no interest whatsoever in his wife's interest in such property.

In the instant case there were living two children of the spouses. Therefore, neither decedent nor his wife had an inheritable interest in the other's interest in the community property. Certainly there were no common law marital rights of either the decedent or his wife in the other's property.

The foregoing statements are so fundamental in the concept of rights in community property that they are axiomatic and need no citation of authorities in their support.

Since decedent's wife had no interest whatsoever in his interest in the community property, marital or otherwise, there was and could be no "relinquishment of marital rights in decedent's property" by his wife in the transfers whereby the rights of decedent and his wife in the community property were converted to rights held by them as tenants in common. This being true, we have no question here of whether there was a relinquishment of marital rights for an adequate and full consideration in money or money's worth.

It has been uniformly recognized by the courts, including this Court, that spouses in a community property state may by contract between them convert their separate property into community property and convert their community property into separate property. In the case of *Samuel Friedman*, 10 T. C. 1145, we held that the right to convert separate property into community property was supported "by an array of authority that neither writing nor consideration is necessary to support such a transfer." Specific cases cited in support of that text were *Kenney* v. *Kenney*, 30 Pac. (2d) 398, and *Estate of Joe Crail*, 46 B. T. A. 658.

If, however, the argument in the majority opinion to the effect that the transfers were not made for an adequate and full consideration in money or money's worth should still be deemed to merit attention, it is only necessary in refutation thereof to recite the fact that

each of the spouses transferred to the other an undivided one-half interest in the community property to be held by him as a tenant in common. Whatever was the money's worth of such transfer by each spouse, it was adequately and fully met by a like transfer to him.

It will be borne in mind that before the transfers each of the spouses owned a moiety of the entire property in community, and after the transfers each of the spouses owned a moiety of the entire property as tenants in common. Both before and after the transfers each spouse had an undivided one-half interest in the entire property and the only effect of the transfers was to change the character of the title in each from that of a community interest to that of an interest of a tenant in common. It can not, therefore, be properly said that adequate and full consideration in money or money's worth for the transfer by each spouse to the other must be measured by the market value of one-half of the property involved, for no such transfer was made, since after the transfer each spouse had the same quantum of property he had before the transfers. The consideration for the change of the character of the title by which each spouse held such quantum lies in the transfer from each to the other. It was an adequate and full consideration in money or money's worth.

The fundamental misconception by the majority of the character of the interest of decedent's wife in the community property led to its conclusion which, in my opinion, is basically incorrect.

LEECH and JOHNSON, *JJ*., agree with this dissent.

———.

JOHNSON, *J.*, dissenting: I am unable to concur in the opinion reached by a majority of the Court. It recognizes that decedent had no reason to apprehend death at the time of the transfer, but sustains the Commissioner's determination on the ground decedent's "controlling and dominant purpose was to escape estate taxes." The facts found indicate that decedent was conscious of the tax consequences of his act, and, being conscious, chose an advantageous form of tenure in making the transfer. In *Gregory* v. *Helvering*, 293 U. S. 465, the Supreme Court recognized: "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits  *  *  *." California law permits the change from community to tenancy in common. See *Jurs* v. *Commissioner*, 147 Fed. (2d) 805, in which the Circuit Court of Appeals for the Ninth Circuit, so holding, cites many cases to this effect. Such a change could be made by any taxpayer, whether or not apprehensive of death and whether or not tax-conscious. The majority concludes, however, that decedent's awareness of an estate tax saving is alone sufficient to support a finding that the transfer

was made in contemplation of death. In all the cases cited the finding that death was contemplated is supported by substantial other evidence; it is not predicated merely on the decedent's wish to reduce estate taxes upon eventual death. And in *Commonwealth Trust Co. of Pittsburgh* v. *Driscoll*, 50 Fed. Supp. 947, the only cited case involving, as here, a mere change in the form of tenancy between spouses, the transferor husband alone originally owned the land involved, then conveyed it to himself and wife by the entirety, and, after reaching 80 years of age, conveyed it to her alone. The decedent here was not at an advanced age, but only 56, and not in ill health when the transfer was made. He may have been tax-conscious, but he was not contemplating death, and in my opinion section 811 (c) was not designed to nullify tax-wise a conveyance made under such circumstances.

I can not agree with the majority opinion that it is "almost absurd" to regard escape from the gift tax as decedent's object. Decedent's lawyer had advised him that after January 1, 1943, a transfer to his wife would be taxable, and I think the facts indicate that it was in contemplation of a change in the gift tax law as applied to community property, rather than in contemplation of death, that decedent took the action when he did.

The majority rejects petitioner's alternative contention that the transfer was for a full and adequate consideration in money or money's worth. Obviously, decedent received in value the exact equivalent of what he surrendered, but the majority, viewing the change in tenure as merely a relinquishment of marital rights in property, which by section 812 (b) is not to be deemed consideration in money or money's worth, holds that decedent received no recognizable consideration for what he transferred; further, that the consideration received did not bring into the estate the equivalent of what was transferred. This reasoning is at best doubtful, for after the change in tenure petitioner had exactly the equivalent of what he had before, and the wife likewise had no more and no less, for her "interest in the community was a present vested interest," *Commissioner* v. *Harmon*, 323 U. S. 44, and the husband could not, under California law, alienate it without her consent. § 161 (a), § 172, 172 (a), Civil Code of California. But under my view that the transfer was not made in contemplation of death, questions arising out of the alternative contention become academic.

Hill, *J.*, agrees with this dissent.