ESTATE OF FRANK SBICCA, DECEASED, ERNESTA SBICCA AND ARTHUR SBICCA, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 70987. Filed October 24, 1960.

*Rudolph A. Phillips, C.P.A.*, for the petitioner.
*Alfred L. Margolis, Esq.*, for the respondent.

ATKINS, *Judge:* The respondent determined a deficiency of $13,371.60 in estate tax against the petitioner, the estate of Frank Sbicca. The principal issue relates to the amount of the marital deduction to which the estate is entitled under section 812(e) of the Internal Revenue Code of 1939. By amendment to the petition, the petitioner raises the issue whether certain property should be excluded from the gross estate.

### FINDINGS OF FACT.

Some of the facts were stipulated and the stipulations are incorporated herein by this reference.

The decedent, Frank Sbicca, was born in Italy and immigrated to the United States prior to May 8, 1916, the date of his marriage. He and his wife, Ernesta, lived in Philadelphia, Pennsylvania, from the date of their marriage until July 1943, when they moved to California.

At the time the decedent came to the United States he had a fractional interest, of small value, jointly with his brothers in a family home in Italy, but he did not receive any income therefrom after coming to the United States. He did not receive any gifts, bequests, or inheritances after the date of his marriage.

At the time of his marriage the decedent had only about $300, which he and his wife used to buy household furniture. After the marriage the decedent repaid to his brother in Italy some money which he had borrowed to come to the United States, and he sometimes sent additional sums to his brother in Italy to help him out.

The decedent was a shoemaker by trade, and in September of 1920 he started his own business, which included the manufacture of shoes, in the house in which he lived. At the time of his marriage the decedent could not speak English, and his wife translated for him

in his contacts with the public, and answered the telephone. She also did the office work such as keeping books, making payrolls, reconciling bank accounts, and managing the business when he was away. The decedent always consulted with his wife about purchases of property and investments. The business was incorporated in about 1930, and thereafter the decedent received a salary from the corporation.

The decedent died November 13, 1953, at which time he was a resident of California. He was survived by his wife, Ernesta, three sons, and two daughters. The decedent's wife and his son Arthur are executrix and executor of the decedent's estate and verified the petition herein on December 2, 1957.

The decedent executed a will in California on March 22, 1950. The first paragraph thereof provided for the payment of debts and cost of last illness and burial. The second paragraph bequeathed property as follows: To his three sons in equal parts all of his shares of stock in Sbicca of California, a California corporation; to his wife a life estate in the business property at 214 West 17th Street, Los Angeles, California, with remainder to his five children; and to his five children certain land and buildings in Los Angeles. The third paragraph provides as follows:

I give, devise and bequeath the residue of my estate, real and personal, wherever situate, to my wife, ERNESTA, if she is living at the time of the entry of the Order of Final Distribution of my estate. If my wife, ERNESTA, is not living at the time of the entry of the Order of Final Distribution of my estate, the residue of my estate shall vest in my said five (5) children, share and share alike.

On the same date, and before the same witnesses, the decedent's wife executed the following document:

### WAIVER

I, Ernesta Sbicca, wife of Frank Sbicca, hereby certify that I have read the foregoing Will of my husband and fully understand that my husband by this Will disposes not only of his separate property but also of our community property now owned or hereafter to be acquired, if any, including my half of that property. Being fully satisfied with its provisions, I hereby elect to accept and acquiesce in the provisions of the Will, waiving all claims to my share of any community property and all other claims that I may have upon any of the property disposed of by the Will, but not including property exempt from execution, my right to a probate homestead, nor my right to a family allowance out of my husband's estate during probate. This instrument is not a transfer or release of my right, title or estate in any property now owned or hereafter to be acquired by me, is revocable by written instrument executed by me and delivered to my husband during his lifetime, and it shall be effective and valid for any purpose only after the decease of my husband and provided I survive him, and upon the condition that the foregoing Will shall be duly admitted to probate by a court of competent jurisdiction and that it shall not be successfully

contested or probate revoked. My husband shall have the right to revoke this Will at any time without liability to me.

DATED at Los Angeles, California, the 22 day of March, 1950.

ERNESTA SBICCA.

The will and the waiver were filed in the Superior Court of California for the county of Los Angeles on November 23, 1953, and were admitted to probate on December 10, 1953. On July 14, 1955, the presiding judge of the Superior Court for the county of Los Angeles issued "ORDER SETTLING FINAL ACCOUNT AND FOR DISTRIBUTION UNDER WILL," which provides in part as follows:

The first and final account and report, and petition for distribution herein of Ernesta Sbicca and Arthur Sbicca, as executors of the estate of said deceased, by Aaron Levinson, their attorney, coming on this 14th day of July, 1955, for hearing and settlement by the Court, all notices of said hearing having been given as required by law, the Court, after hearing the evidence, and finding that said estate is partly separate and partly community property, and that all inheritance taxes and all personal property taxes due and payable by said estate have been paid, settles said account, approves said report, and orders distribution of said estate as follows:

It is Ordered, Adjudged and Decreed by the Court * * * that in pursuance of and according to the provisions of the last will of said deceased, and Ernesta Sbicca, widow, having elected to take under said last will, the residue of cash, and the property hereinafter described, and all other property belonging to said estate, whether described herein or not, be and is hereby distributed as follows:

To Arthur Sbicca, Peter Sbicca, and Frank Sbicca, Jr., Wanda Pontrelli and Flora Osa, Children of decedent, each, an undivided one-fifth interest in and to the following described real property: [Describing the Los Angeles real property.]

    \*        \*        \*        \*        \*        \*        \*

To Ernesta Sbicca, widow of decedent, a life estate in real property described as: [Description of property];

    \*        \*        \*        \*        \*        \*        \*

* * * and subject to the life estate held by said Ernesta Sbicca, said property shall vest in Arthur Sbicca, Peter Sbicca, Frank Sbicca, Jr., Wanda Pontrelli and Flora Osa, children of decedent, in equal parts;

    \*        \*        \*        \*        \*        \*        \*

To Ernesta Sbicca, widow of decedent, all the rest, residue and remainder of said estate, consisting, so far as the same is known, of the following property;

Cash in checking account, Bank of America;

Cash in savings account in Citizens National Bank, after payment of attorney fees;

Account receivable from Sbicca of California, $3,362.45;

Notes receivable from Sbicca of California, $13,750.00;

41⅔ shares of United States Shoe Corporation of Cincinnati;

27 shares of Los Feliz Drive-in Theatre;

Share in partnership known as Sbicca Enterprises.

An estate tax return was timely filed for the estate by the executor and executrix; and it was represented therein that decedent's total

gross estate was $220,668.42, after reduction of insurance by 50 per cent on account of the wife's community interest and reduction by 50 per cent of value of certain jointly held property (being the wife's interest either as community interest or separate interest) ; that the adjusted gross estate was $173,165.74; and that the total allowable deductions were $99,374.45, including a marital deduction of $75,445.39. It has been stipulated that the decedent left a gross estate consisting of separate and community property, as set forth in the estate tax return.

In the notice of deficiency the respondent allowed a marital deduction in the amount of $26,445.11, computed as follows:

| Item | Returned | Determined |
|------|---------:|-----------:|
| 1. Life insurance | $8,750.00 | $8,750.00 |
| 2. Stock—Joyce, Inc | 1,000.00 | |
| 3. Stock—Los Feliz Drive-In Theatre | 6,886.35 | |
| 4. Cash and note receivable | 17,470.94 | |
| 5. Jointly owned property | 17,695.11 | 17,695.11 |
| 6. One-half interest in partnership, Sbicca Enterprises | 35,019.93 | |
| Total | 86,822.33 | 26,445.11 |
| Less: Death taxes on above | 11,376.94 | |
| Net deduction | 75,445.39 | 26,445.11 |
| Adjustment—difference | | 49,000.28 |

In the notice of deficiency the respondent stated:

It is determined that under the provisions of Section 812(e) of the Internal Revenue Code of 1939, the net amount deductible for bequests, etc. to the decedent's surviving spouse is $26,445.11 instead of the claimed amount of $75,445.39. The amount of the residuary estate bequeathed to the surviving spouse under the terms of decedent's Will, being conditioned upon her being alive at the time of the entry of the Order of Final Distribution, is a terminable interest within the purview of Sections 812(e)(1)(B) and 812(e)(3) and does not qualify for the marital deduction.

It was stipulated that, in addition to deductions for unpaid taxes claimed in the estate tax return, the estate is entitled to deduct California income tax of $158.16 and property taxes in the amount of $1,512.27 owing at the date of decedent's death.

OPINION.

The property with respect to which the respondent disallowed the marital deduction consisted of stock, cash, a note receivable, and an interest in a partnership, which passed as a part of the residue of the decedent's estate, pursuant to the third paragraph of his will. By such paragraph the decedent gave, devised, and bequeathed the residue of his estate to his wife "if she is living at the time of the entry of the Order of Final Distribution of my estate," but provided that if

she should not be living at such time "the residue of my estate shall vest in my said five (5) children, share and share alike." The respondent held that the property interest passing to the wife under this paragraph of the will was a terminable interest, whereas the petitioner contends it was not.

There are set forth in the margin pertinent provisions of section 812(e) of the Internal Revenue Code of 1939 and of Regulations 105, promulgated pursuant thereto.[1]

Under the literal provisions of the will here in question, any interest of the decedent's surviving spouse would terminate if she should not be living at the time of the entry of the order of final distribution. Clearly the entry of such order of final distribution could have occurred after the expiration of 6 months from the date of the decedent's death—in fact, it did occur over 1½ years after such date. Thus, under the literal provisions of the will, the death of the surviving spouse, either within or after a period of 6 months after the decedent's death, could cause a failure or termination of any interest which she received.

Section 812(e)(1)(B) presupposes that some interest has passed from the decedent to the surviving spouse, but the section is applica-

---

[1] Section 812(e) of the Code provides that there shall be allowed as a deduction from the gross estate for estate tax purposes :

(1) ALLOWANCE OF MARITAL DEDUCTION.—

(A) In General.—An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(B) Life Estate or Other Terminable Interest.—Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse) ; and

(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse ;

\* \* \* \* \* \* \*

(D) INTEREST OF SPOUSE CONDITIONAL ON SURVIVAL FOR LIMITED PERIOD.—For the purposes of subparagraph (B) an interest passing to the surviving spouse shall not be considered as an interest which will terminate or fail upon the death of such spouse if—

(i) such death will cause a termination or failure of such interest only if it occurs within a period not exceeding six months after the decedent's death, or only if it occurs as a result of a common disaster resulting in the death of the decedent and the surviving spouse, or only if it occurs in the case of either such event ; and

(ii) such termination or failure does not in fact occur.

Regulations 105, section 81.47b(d), provides in part as follows :

"Where the only condition which will cause the interest taken by the surviving spouse to terminate is of such nature that it can occur only within 6 months following the decedent's death, the exception provided under section 812(e)(1)(D) will apply, provided the condition does not in fact occur. However, where such condition (unless it relates to death as a result of a common disaster) is one which may occur either within such 6-month period or thereafter, the exception provided under section 812(e)(1)(D) will not apply."

ble if, viewed as of the time of the death of the decedent, such interest, of whatever character, may terminate or fail.[2]

A reading of the decisions of the courts of California clearly establishes that under California law a gift conditioned upon survival of distribution is not an indefeasible interest. In *In re Hampe's Estate*, (Cal. Dist. Ct. App., 2d Dist.) 193 Pac. 133, the decedent by will gave certain legacies to an individual, but provided that if such individual should "die prior to distribution," all interest in the property should fail and go to other named individuals. It was there specifically held that the phrase "die prior to distribution" means that if the legatee is not alive on the date of the entry of the decree of distribution the legacy lapses. See also *In re Jameson's Estate*, (Cal. Dist. Ct. App., 2d Dist.) 208 P. 2d 54, and *In re Zuber's Estate*, (Cal. Dist. Ct. App., 2d Dist.) 304 P. 2d 247.

In *Estate of Allen Clyde Street*, 25 T.C. 673, we considered a will which was subject to interpretation under the laws of the State of California, in which the testator devised and bequeathed his property to his wife, but provided that "In the event my wife * * * predeceases me, or predecease distribution to her, then I give, devise, and bequeath to my niece * * *." We there held, citing *Kasper* v. *Kellar*, (C.A. 8) 217 F. 2d 744,[3] that the surviving spouse's interest

---

[2] Section 812(e) was enacted by section 361 of the Revenue Act of 1948. The Senate Report under the Revenue Act of 1948 (S. Rept. No. 1013, 80th Cong., 2d Sess. (Mar. 16, 1948)), provides in part as follows :

"Subparagraph (B) of section 812(e)(1) disallows the marital deduction with respect to certain terminable interests. Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, the interest passing to the surviving spouse will terminate or fail, the marital deduction will be disallowed under such subparagraph (B) if the conditions of clauses (i) and (ii), or of clause (iii) of such subparagraph are met. It is not necessary under such subparagraph (B) that the contingency or event must occur or fail to occur in order to make the interest terminable. Thus a terminable interest under such subparagraph includes an interest bequeathed to the surviving spouse as long as she resides in Washington, D.C. On the other hand, it includes interests which will in all events terminate, such as an estate for the life of the surviving spouse.

"Subparagraph (B) is intended to be all-encompassing with respect to various kinds of contingencies and conditions. Thus, it is immaterial whether the interest passing to the surviving spouse is considered as a vested interest subject to divestment or as a contingent interest. Subparagraph (B) applies whether the terms of the instrument or the theory of their application are conceived as creating a future interest which may fail to ripen or vest or as creating a present interest which may terminate. The occurrence of a contingency includes the ending of a condition. Thus, an interest given to the surviving spouse as long as she remains unmarried is a terminable interest.

\* \* \* \* \* \* \*

"If the decedent by his will bequeaths a terminable interest for which a deduction is not allowed and the surviving spouse takes in accordance with the will, the marital deduction is not allowed even though under the local law the interest which such spouse could have taken against the will was a fee interest for which a deduction would be allowed. Any theory that the interest which she could have taken under the local law did pass to her in such a case and was used by her to purchase the interest under the will is contrary to the intended application of this section."

[3] In *Kasper* v. *Kellar, supra,* the Court of Appeals approved the provisions of Regulations 105 which we have set forth in the margin, and held that whether an interest in property is terminable depends upon what might happen under the will and not what actually did happen. However, the case was remanded by the Court of Appeals for a determination by the District Court of the question whether under the laws of South

was terminable and that the estate was not entitled to a marital deduction. See also *California Trust Co.* v. *Riddell*, (S.D. Cal.) 136 F. Supp. 7, which involved a will containing substantially the same provision as was involved in the *Street* case and in which the District Court reached the same conclusion. Cf. *Roberts* v. *United States*, (S.D. Cal.) 182 F. Supp. 957, in which a contrary conclusion was reached. In that case, although the will provided that the property would go to others if the spouse should die prior to the distribution of the estate, the court construed the language of the will there involved as indicating that there was no conditional aspect to the character of the surviving spouse's interest. But aside from the question whether the conclusion reached in *Roberts* v. *United States, supra*, was correct, we are satisfied that under the provision of the will in question in the instant case, which is somewhat different from that involved in the *Roberts* case, the surviving spouse's interest was terminable.

The petitioner argues in effect that the order of the Superior Court of Los Angeles County which we have quoted in the Findings of Fact constituted an adjudication that the surviving spouse received from the decedent at the time of death an indefeasible interest in the property. In this we think the petitioner is clearly in error. Such order was not such an adjudication; it was merely an order of distribution, the widow being then alive. *Estate of Allen Clyde Street, supra;* and *Shedd's Estate* v. *Commissioner*, (C.A. 9) 237 F. 2d 345, affirming 23 T.C. 41. In the latter case it was held that a marital deduction is allowable only as to transfers which clearly come within the terms of the statute; that the date as of which the character of the surviving widow's estate is to be determined is the date of death of the decedent, and that a State court order of distribution did not in any way pass upon the nature of the title the widow took at the date of decedent's death.

We hold that the respondent did not err in his adjustment to the marital deduction claimed by the estate.

By amendment to the petition the petitioner alleges, alternatively, that one-half of the value of the property valued at $60,377.22 which was excluded by the respondent from the computation of the marital

---

Dakota the expression "if living at the time of the distribution of my estate" should be read as meaning "if living at the time of my death." Upon remand the District Court held that under the law of South Dakota the surviving spouse received from the decedent at the time of decedent's death an indefeasible title to the property, but recognized that the laws of some other States, including California, might be to the contrary. *Kellar* v. *Kasper*, (S.D. S. Dak.), 138 F. Supp. 738. To similar effect are *Steele* v. *United States*, (D. Mont.), 146 F. Supp. 316, involving a Montana will; *Smith* v. *United States*, (D. Colo.), 158 F. Supp. 344, involving a Colorado will; and *Martinson* v. *Wright*, (D. Idaho), 181 F. Supp. 535, involving an Idaho will. In the *Steele* and *Martinson* cases the court was of the opinion that it was bound by adjudications of State courts with respect to the particular wills involved.

deduction, and stock of Sbicca of California which was included in the estate tax return at a value of $10,571.09, should be excluded from the gross estate. In this connection the petitioner relies upon section 201.5 of the California Probate Code [4] (West's Annotated California Codes). It is claimed that the above property, reported in the decedent's return as not being California community property, represented property accumulations which had been acquired from personal earnings while decedent was a resident of Pennsylvania, a noncommunity property State, plus increment thereto and conversions thereof, and hence is the type of property referred to in section 201.5. The allegation is that to the extent the widow waived claims to any property, either ordinary community property or property described in section 201.5, she gave a contractual consideration in money or money's worth which should result in an exclusion from the gross estate under section 811(c) of the Internal Revenue Code of 1939. Another alternative argument made on brief is that since section 201.5 states that upon the death of the decedent one-half of the property described in that section "shall belong" to the surviving spouse, such one-half indefeasibly vested in her at decedent's death and should be excluded from the gross estate, as is true in the case of ordinary community property.

The property in question was included in the estate tax return as separate property of the decedent and the parties stipulated that "the decedent left a gross estate consisting of separate and community property, as is set forth in the United States Estate Tax Return." And the Probate Court, in the order of distribution, stated that the property was partly community and partly separate. On the other hand the evidence shows that the decedent had no property, or property of negligible value, at the time of marriage and that after marriage he received no property by gift, bequest, or inheritance. Whether this is sufficient to show that the property here in question was of the character described in section 201.5 as distinguished from separate property, we find it unnecessary to decide. Even if it be assumed that the property in question is of the type described in section 201.5, it is our opinion that no part of the value of the property may be excluded from the gross estate. We have carefully examined the holdings of

---

[4] Section 201.5 of the California Probate Code, as it existed at the time of the death of the decedent provided:

"Personal property; portion belonging to surviving spouse; distribution of other portion

"Upon the death of either husband or wife one-half of all personal property, wherever situated, heretofore or hereafter acquired after marriage by either husband or wife, or both, while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this state, shall belong to the surviving spouse; the other one-half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the debts of the decedent and to administration and disposal under the provisions of Division 3 of this Code."

the courts of California which deal with section 201.5. From them it is clear that section 201.5 does not have the effect of converting property of this nature into community property during the lifetime of the spouses. In *Paley* v. *Bank of America National Trust & Sav. Ass'n.*, (Cal. Dist. Ct. App., 2d Dist.) 324 P. 2d 35, the court stated:

While living in the common-law states of Illinois and Pennsylvania, plaintiff acquired substantial personal property. We are of the view that all of that property, under the law of the states of his then domicile, was his separate property and that Lillian had neither a present nor expectant interest therein. When the Paleys moved to California in 1936, plaintiff brought the property with him. Had that property been acquired by Paley while he was domiciled in California, it would have been community property, but having been his separate property in the state in which it was acquired, its character did not change when it was brought to California. It was plaintiff's separate property where it was acquired and it retained its separate character in this state.

\*       \*       \*       \*       \*       \*       \*

\* \* \* That it [sec. 201.5] was intended to be strictly a statute of succession as suggested by the dissenting opinion and did not purport to rearrange property rights as between living spouses is borne out in a number of cases. In re Miller, 31 Cal. 2d 191, at page 196, 187 P. 2d 722, at page 725, \* \* \*.

\*       \*       \*       \*       \*       \*       \*

Other courts have expressed a similar view that the section did not attempt to reclassify in the lifetime of the spouses any property coming within its terms (Paley v. Superior Court, 137 Cal. App. 2d 450, 290 P. 2d 617; In re Estate of Schnell, 67 Cal. App. 2d 268, 154 P. 2d 437).

In *Paley* v. *Superior Court*, (Cal. Dist. Ct. App., 2d Dist.) 290 P. 2d 617, the court stated:

Was the personal property standing in the wife's name at her death quasi-community, and, if so, does plaintiff succeed to one-half thereof under said section 201.5, notwithstanding her leaving same to others in her will?

It is established law that section 201.5 does not convert into community property or otherwise reclassify during lifetime of the two spouses property falling within its description and brought here from a common-law state. It is strictly a succession statute and has been upheld on that basis. In re Miller, 31 Cal. 2d 191, 196, 187 P. 2d 722; In re Estate of Perkins, 21 Cal. 2d 561, 570, 134 P. 2d 231; Logan v. Forster, 114 Cal. App. 2d 587, 597, 250 P. 2d 730; 16 Cal. Jur. 2d § 52, p. 101. Separate property of either spouse brought here from Pennsylvania remained during their joint lives the separate property of each, but upon death of either spouse (assuming constitutionality of application of 201.5 to the survivor's separate property) it was automatically reclassified as community property (if fitting the description of 201.5) for purpose of succession. The spouse who takes one-half under this section regardless of the will does so by succession or inheritance and irrespective of whether that half goes through the probate court.

See also *Estate of Thornton*, (S. Ct.) 1 Cal. 2d 1, 33 P. 2d 1, where it was held that section 164 of the California Civil Code was unconstitutional insofar as it attempted to convert into community property during the life of a spouse, property acquired while domiciled

elsewhere which would not have been separate property if acquired while domiciled in California.

It thus appears that the property in question was, and continued to be throughout decedent's life, his separate property. It is, therefore, includible in his gross estate. Section 811 (a) of the Internal Revenue Code of 1939 provides that the gross estate shall include the value at the time of death of all property to the extent of the interest therein of the decedent at the time of his death.

Section 811 (c) of the Code, to which the petitioner has referred as providing for an exclusion, provides that the value of the gross estate of the decedent shall include the value at the time of his death of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) in contemplation of, or to take effect at, his death. The decedent executed a will making testamentary disposition of the property in question. Prior to the death of the decedent the surviving spouse executed a "waiver" in which she specifically stated that she understood that the will disposed of both the community property and the decedent's separate property and that she elected to accept and acquiesce in the provisions of the will, waiving all claims to her share of any community property and all claims that she might have upon any of the property disposed of by the will. Distribution was made in accordance with the will. As indicated in the quotations from the California court decisions, the surviving spouse had no vested interest in the property up to the time of the decedent's death. It seems to us that such interest as she did have was no more than an expectancy [5] of a character similar to the expectancy which a wife in California had in community property prior to the amendment to the California Civil Code in 1927 which gave her a present, existing, and equal interest in community property during the life of the spouses. The statutes of California have continuously contained a provision with respect to community property (which it will be observed is similar to the provision of section 201.5) as follows: "Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse * * *." With respect to such community property acquired prior to the 1927 amendment, it was consistently held that the wife's

[5] We note that by amendments to section 201 made in 1957, the interest of the surviving spouse is referred to as an expectancy. Section 201.8 of the California Probate Code. For a comprehensive discussion of the many complicated property questions arising as a result of the influx of people into California from other States, as well as a discussion of the various court decisions and statutory amendments, see "Rights of a Surviving Spouse in Property Acquired by a Decedent While Domiciled Outside California," 47 Calif. L. Rev. 211 (1959).

interest was a mere expectancy and that the full value of the property was includible in the husband's gross estate for estate tax purposes. See *United States* v. *Robbins*, 269 U.S. 315; *Estate of Alfred S. Gump*, 42 B.T.A. 197, affd. (C.A. 9) 124 F. 2d 540, certiorari denied 316 U.S. 697; *Rickenberg* v. *Commissioner*, (C.A. 9) 177 F. 2d 114, affirming 11 T.C. 1, certiorari denied 338 U.S. 949; and *Estate of Salina J. Gray*, 14 T.C. 390.[6] In the *Rickenberg* and *Gray* cases it was held that a wife's interest in such community property was a marital right the relinquishment of which was not a transfer for a consideration in money or money's worth.

Since, as we believe, a surviving spouse's interest in section 201.5 property is no more than an expectancy, any relinquishment by the surviving spouse in the instant case of any of her statutory rights in such property would not be considered as a consideration "in money or money's worth" within the meaning of section 812(b) of the Internal Revenue Code of 1939, which provides:

> For the purposes of this subchapter, a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate shall not be considered to any extent a consideration "in money or money's worth."

In view of the foregoing, we hold that no portion of the value of the property in question is to be excluded from the gross estate.

In the petition it was alleged that the respondent erroneously valued the capital stock of Sbicca of California at $10.42 per share. No evidence was adduced by the petitioner upon the subject except to stipulate that this was the value at which the stock was included in the estate tax return, and that such was the value found by the appraiser for inheritance tax purposes. No mention was made as to this issue upon brief. Under the circumstances, it would appear that this issue has been abandoned by the petitioner. In any event, it has not been shown that the value used was incorrect.

*Decision will be entered under Rule 50*

---

[6] It is also noted that with respect to such community property acquired prior to the 1927 amendment, the courts of California took the position that if the wife elected to accept the provisions of the will, the testamentary disposition by the husband of more than one-half of the community property was not void, but voidable, and that if the surviving spouse elected to take under the will the disposition in excess of one-half was affirmed and made valid and the testamentary disposition then vested the property in the donee. *Spreckels* v. *Spreckels*, 172 Cal. 775, 158 Pac. 537, and *Blethen* v. *Pacific Mut. Life Ins. Co.*, 198 Cal. 91, 243 Pac. 431. See *Estate of Salina J. Gray*, *supra*.

We have found no California court case dealing specifically with an election by a surviving spouse to take section 201.5 property in accordance with the will of the deceased spouse, and it has been indicated that no such case has been decided. See "Husband and Wife: Election and Marital Property Interests," 6 U.C.L.A. L. Rev. 178 (1958–1959).