RAFAEL BUSCAGLIA, ETC., Petitioner, *v.* TAX COURT, Respondent; MARÍA MONSERRATE SANTIAGO Y RIVERA ET AL., Interveners.

No. 197. Argued January 10, 1949.—Decided April 11, 1949.

*Vicente Géigel Polanco, Attorney General (Luis Negrón Fernández,* former *Attorney General,* on the petition of certiorari and *José C. Aponte, Acting Attorney General,* on the brief) and *Carlos Santana Becerra* and *J. B. Fernández Badillo, Assistant Attorneys General,* for petitioner. *Enrique Córdova Díaz* and *Raúl Matos* for interveners, plaintiffs in the main action.

MR. JUSTICE SNYDER delivered the opinion of the Court.

After the death of Vicente Usera Laseda his heirs paid $31,736.18 as inheritance taxes. The Treasurer determined that a tax of $67,444.29 should have been paid. The heirs of Usera filed suit in the Tax Court praying for a declaration that they had paid the proper tax. After a trial on the merits, the majority of the Tax Court sustained the complaint. We granted the petition of the Treasurer to review this decision.

Vicente Usera Laseda was 82 years and 8 months old when he died on December 29, 1943. On April 9, 1942 he

executed a deed making gifts to his children of the farms "La Esmeralda" and "Las Gavias" valued at $309,606 and $164,819, respectively. The principal question in this case is whether the Treasurer is correct in his contention that these farms should have been included in the properties inherited by the heirs of Usera Laseda when the latter died twenty months after executing the deed of donation.

The theory of the Treasurer is that the deed was a *pro forma* simulated donation which did not result in a transfer of title during the life of the decedent. Although he expressly disclaims any intention of attacking the deed because of mental incapacity of the decedent when it was executed, the Treasurer contends that "this donation was not the free and exclusive act of the decedent but rather the result of a plan conceived by his heirs and administrators in which the decedent was merely a passive element".

The Treasurer presented considerable evidence in support of his theory that the gift was simulated. The deed was never recorded. It divided the farms among the children of the decedent in exactly the proportions they would have .inherited them. Both prior and subsequent to the deed of donation certain sons of the decedent managed the properties ·of their father under powers of attorney. By a private document of April 10, 1942 among the donees of the farms the shares of the non-managing donees were leased to the managing donees, with provisions that (1) the properties would be maintained undivided and administered in the form they had been administered prior to the donation and that (2) the lessors would receive as rent $1.50 per ton of sugar.

Both the deed and the private lease, although executed in April 1942, provided that they should be retroactive to December 31, 1941. This resulted in reduction of income taxes for the natural year 1942, as seven persons instead of one person reported the profits from these farms as their income for 1942.

Even after execution of the deed of donation, correspondence involving these two farms with the Public Service Commission, the AAA, the State Insurance Fund, a government agency dealing with priorities for fertilizer, and Central Caribe was signed in the name of the decedent by his sons under the power of attorney, and referred to these farms as owned by the decedent.

The requests to the AAA for benefit payments stated that the producer was Vicente Usera, and that 100 per cent of the compensation belonged to him. The checks continued to be made payable to him and went into his bank account. In the same way, Central Caribe, which ground the cane produced on these farms, issued the checks therefor in the name of the decedent. The property taxes continued to be paid in the name of Usera, Sr. and to be charged to his bank account.

The Treasurer introduced a letter of July 14, 1942, signed in the name of the decedent by one of his sons, addressed to the AAA. It involved these farms and read in part that "Under separate cover I am sending the plans which show my cane plantings, listing in detail the extension of each of the plots of which they consist. Those plans have been prepared for the distribution of these lands among my heirs *at the proper time* and to that effect their names appear on each sheet." (Italics ours).

Vicente Usera executed his will on September 29, 1942. He stated that he was not listing his properties therein because his real property was recorded in the Registry. On that date the deed of donation had not been presented in the Registry. Nevertheless, he did not mention the donation in his will. And in the latter, just as in the deed of donation, he treated all his children exactly alike.

In support of his theory that this was a simulated gift planned by the sons, the Treasurer also introduced testimony that the decedent was 82 years old when he executed the deed; that he was then suffering from diabetes and arterio-

esclerosis; that on March 13, 1942, a few days before the deed of donation was executed, one of the heirs swore to the income tax return of the decedent, stating that he was ill; that the 1943 return was filed in the same manner; that on the same day the deed was executed, the decedent had two attacks which usually left a person in a semicoma.

On the other hand, the taxpayers introduced testimony that Usera had been discussing the possibility of making this donation with his attorney and banker for a year; that despite his age and illness, he felt well and was mentally alert and had no thought of death; that the donation was his own idea and had a two-fold purpose; namely, (1) to make his mature children financially independent, and (2) to avoid increased income taxes.

The taxpayers also offered testimony that the deed was not recorded because of the high recording fees, which were later reduced; that the AAA, State Insurance Fund, etc., were not notified of the change in ownership because of the red tape involved in effecting a transfer with those organizations; that Central Caribe was notified that the children now owned the farms; that the decedent wrote the Land Authority he no longer owned the farms; that the checks from the Central and the AAA went to the father's account to reimburse him for the *refacción* loans he was making to the sons; that the father's books faithfully reflected all these transactions; that the children paid income tax on the net income from their share of these farms after the deed of donation was executed; and that the father owned property valued at $600,000 after making a gift of these farms to his children.

 We have held repeatedly that we have no power to re-examine the evidence to determine if we agree with the triers of the facts. The Legislature has limited review by us to errors of law. And only if there are no facts whatsoever to sustain the conclusions of the Tax Court may we say that an error of law was committed. *Fajardo* v. *Tax*

*Court*, 68 P.R.R. 691, 694, and cases cited; *Buscaglia* v. *Tax Court; Pérez Vahamonde, Intervenor*, 68 P.R.R. 322, 327. There was evidence to support the findings of the Tax Court that (1) this was a real and effective, not a simulated gift, and (2) that the father freely planned and executed it with full realization of the consequences of his acts. We are therefore without power to alter these findings.

 Under § 13 of Act No. 99, Laws of Puerto Rico, 1925,[1] even an effective *inter vivos* gift is subject to the inheritance tax if it is made with the purpose of avoiding the latter. An analogous Federal statute subjects transfers made "in contemplation of death" to the Federal estate tax. Where more than one motive for making a gift exists, it is still not certain under the Federal statute whether "contemplation of death" must be the predominant motive, or whether it is sufficient, to make the transfer taxable, if "contemplation of death" was a substantial, although not the controlling, motive. See *Allen* v. *Trust Co.*, 326 U. S. 630; *City Bank Co.* v. *McGowan*, 323 U. S. 594; *Estate of Edwin W. Rickenberg*, 11 T.C. 1; *Farmers' Loan & Trust Co.* v. *Bowers*, 98 F. (2) 794, cert. denied, 306 U. S. 648; *Tait* v. *Safe Deposit & Trust Co. of Baltimore*, 74 F. (2) 851, 854 (C.C.A. 4, 1935); *Sellinger's Adm'r* v. *Reeves*, 166 S.W. (2) 54, 57 (Ky., 1942); *Bank of New York* v. *Kelly*, 38 A. (2) 899, 902 (N.J., 1944); Annotations, 120 A.L.R. 170, 148 A.L.R. 1051; I Paul, Federal Estate and Gift Taxation, § 6.01 *et seq.* and 1946 Suppl., p. 91 *et seq.;* Practical Aspects of Federal Taxation, Part 27, Estate Taxation: "Contemplation of Death" by Carlton Fox; Pavenstedt, Taxation of Transfers in Con-

---

[1] This Section reads as follows: "Any donation made with the object on the part of the donor of distributing in life, or after his death, the full ownership, nude ownership or usufruct among his heirs, with the purpose of avoiding a distributable inheritance, thus evading the payment of the inheritance tax, shall be considered as a *mortis-causa* for the purposes of this Act, and shall be subject to the payment of the tax herein provided."

This Section has been repealed by § 13, Act No. 303, Laws of Puerto Rico, 1946. However, it was still in effect when the facts involved herein took place.

templation of Death: A Proposal for Abolition, 54 Yale L.J. 70; 44 Mich.L.Rev. 876.

However, the Treasurer neither in the Tax Court nor in this Court relies on § 13. He limits his case to the contention that the gift was simulated. We therefore leave for another day the question of whether § 13, which is phrased somewhat differently from the Federal statute, makes a gift subject to our inheritance tax if avoidance thereof is a substantial, although not the only purpose, of the donor in making the gift.[2]

We issued the writ of certiorari primarily to examine the contention of the Treasurer that the farms "La Esmeralda" and "Las Gavias" should have been included in the decedent's estate. We therefore find it unnecessary to discuss the contentions of the Treasurer as to the valuation of other minor items in his estate.

The decision of the Tax Court will be affirmed.

Mr. Justice Negrón Fernández did not participate herein.

---

[2] Cf. *Commissioner of Int. Rev.* v. *Church,* 335 U. S. 632, 93 L. ed. 310, interpreting the Federal statute taxing transfers "intended to take effect in possession or enjoyment at or after his [the transferor's] death . . .".